**212 P.2d 762**

**GIULIO v. INDUSTRIAL COMMISSION.**

**No. 5216.**

Supreme Court of Arizona.

Dec. 27, 1949.

Martin S. Rogers, of Tucson, attorney for petitioner.

Donald J. Morgan, of Phoenix, attorney, and Robert E. Yount and H. S. McClusky, Phoenix, of counsel, for respondent.

PHELPS, Justice.

The facts in this case are that the petitioner, Stephen Giulio, hereinafter called applicant, was employed for a short period of time during the year 1946 by the Mann Lumber Company of Tucson, as a truck driver hauling lumber from McNary, Arizona, to Tucson. As a part of his duties he was required to assist in loading the lumber on the truck at McNary and unloading it at Tucson.

On the 23d day of March, 1946, while assisting in unloading a heavy load

of lumber at Tucson some braces on the front part of the truck broke, permitting that part of said truck to rear up in the air approximately 8 feet and then drop to the ground. At the time this occurred applicant was seated in the cab of the truck and as a result of the severe jolting therefrom suffered an injury to his spine. The exact nature of the injury has not even to this date been definitely determined by the medical profession and no specific finding has yet been made by the industrial commission as to the exact character of the injury.

Immediately after the injury applicant was taken to the Pima County Hospital and placed under the care of Dr. J. Donald Francis who caused X-rays to be taken and diagnosed the injury as a compression fracture of the third lumbar. This diagnosis was supported by Drs. R. E. Hastings, R. W. Manning, Dr. Meade Clyne and Drs. Harvey, Faris and Hayden, X-ray specialists who also examined him about that time. This view was also apparently assumed by the medical advisory board consisting of Drs. Lytton-Smith, Hastings, Sult, Harris, Williamson and Southworth. Although these gentlemen made a physical examination of applicant, their report to the Industrial Commission (hereinafter called the commission) indicates that their decision is based in part upon medical reports then before them. Dr. George L. Dixon, after an examination of the applicant, reported to the commission on June 11, 1948, that he was of the opinion that there was a compression fracture to both the second and third lumbar vertebrae. Dr. Francis later at a hearing before the commission on January 4, 1949, expressed doubt as to whether there had been a compression fracture to the third lumbar vertebra and Dr. Warner Watkins of Phoenix, after examining all the X-rays taken from 1946 to 1948 inclusive was of the opinion that there had not been a compression fracture of any of the vertebra but on the other hand stated that what the doctors theretofore examining the applicant had considered as a thickening of the third lumbar vertebra was in fact calcific plaques in the abdominal aorta and not a thickening of the third lumbar at all, and that the evidence of a lumbar fracture is inconclusive.

Dr. E. E. Johnson, osteopath, diagnosed the injury as an injury to the facets of the lumbar joints which he says would not show up on the X-rays because of certain fibrous tissue growths forming in the ligaments around the joints.

On May 23, 1947, the commission made its findings and award, finding that the applicant was injured on March 23, 1946, by accident arising out of and in the course of his employment, and allowed accident benefits and compensation for temporary disability to May 9, 1947. Nowhere in the record does the commission disclose whether the award is based upon total or partial temporary disability.

258

On October 9, 1947, the commission made an amended findings and award allowing additional compensation based on temporary disability from May 10, 1947, until further order of the commission; and on May 3, 1948, the commission made its second amended findings and award for temporary disability based upon the same grounds but terminated said compensation as of April 16, 1948.

The applicant filed a petition for a rehearing and on the 18th day of October, 1948, the commission made its findings and award affirming the award made by it on May 3, 1948. Applicant again filed his petition and application for a rehearing and was granted a hearing which was had on January 14, 1949, at which evidence was taken and on February 3, 1949, the commission again affirmed its findings and award of May 3, 1948. By certiorari we are asked to review this order and decision of the commission.

Applicant claims that the finding and award of the commission is predicated upon a finding by the commission based upon the diagnosis of medical men that the injury to applicant consisted of a compression fracture to the third lumbar vertebra and that the final finding and award of the commission was premised upon a finding by the commission, on medical testimony, that the applicant had fully recovered from such injury. The record does not support this contention. Nowhere in the record is there any finding by the commission that the injury to the applicant consisted of a compression fracture to the third lumbar vertebra. All that is found by the commission is that the applicant was injured by accident arising out of and in the course of his employment. The finding of the medical advisory board of September 24, 1948, upon which the commission relied in part, at least, was based not only upon its examination of the applicant but upon the reports of various physicians including an orthopedic surgeon, a neurologist, surgeons and general practitioners, as well as upon a study of X-rays and the reports of X-ray experts, and concluded that the applicant had fully recovered from his injury (whatever the injury may have been) and that he then suffered no disability.

On the other hand Dr. John Green's report of August 4, 1948, is to the effect that applicant was then suffering from traumatic arthritis and Dr. George L. Dixon in his testimony before the commission on January 14, 1949, testified that the discogenetic changes in the spine of applicant took place more rapidly than they would otherwise if the injury had not occurred and that the diseased condition of applicant was aggravated by said injury and agreed with Dr. Watkins that such discogenetic condition was present in applicant's spine. Dr. E. E. Johnson, osteopath, who had treated applicant for a considerable period of time testified positively at the last hearing before the commission that applicant was still disabled from the injury sustained on March 23, 1946.

■ All of the medical testimony presented except that of the medical board indicates that there is evidence of a narrowing of the space between discs in the lumbar area and some of them include the lower dorsal area. None of the medical witnesses are of the opinion that there exists any herniations of the intervertebral discs but all agree that there is a narrowing of the space between the vertebra in the lumbar area. Some of them attribute it to the healing process of the fracture, others to traumatic arthritis, still others to osteoarthritis and Dr. Watkins diagnoses it as a discogenetic disease which he says is usually present as a natural development in a spine subjected to long-continued jars and strains. There is a sharp conflict in the evidence as to the nature of the injury sustained as well as to whether or not the applicant has fully recovered from the effects of whatever injury he may have sustained. While we might have reached a different conclusion had we been the triers of the fact, we feel that there is ample evidence to reasonably support the finding of the commission.

Under such circumstances we are definitely committed to the rule that the findings and award of the commission must be sustained.

Award affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.