## In the
# United States Court of Appeals
### For the Seventh Circuit

No. 05-1976

JOHN R. RISING-MOORE,

*Plaintiff-Appellant,*

*v.*

RED ROOF INNS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 1:03-CV-00707-SEB-JPG—**Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 6, 2006—DECIDED JANUARY 31, 2006

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* John Rising-Moore prefers to litigate this slip-and-fall case in state court. But after his lawyer said that the claim was worth between $180,000 and $200,000, and demanded $160,000 in settlement, the suit was removed to federal court, where summary judgment was granted in defendant's favor. 368 F. Supp. 2d 867 (S.D. Ind. 2005). Rising-Moore asks us to return the proceedings to Indiana, where he can have a second chance on the merits. Diversity of citizenship is established, but the amount in controversy is disputed.

Rising-Moore slipped just outside the lobby door of a Red Roof Inn during a sleet storm. He had been driving late

at night from Indianapolis to his home in Bloomfield when bad weather led him to stop at the motel rather than complete the journey. It is unclear whether Rising-Moore had experienced icing conditions on the road or just expected to encounter them before reaching home. He says that the ramp between the lobby door and the parking lot was ice-free when he arrived but had become slick by the time he left the office. Rising-Moore maintains that the fall cost him about $10,000 in direct medical outlays, caused him to miss work for about 10 weeks, and left him with permanent injuries (including ongoing pain and suffering). He makes about $175,000 annually from his business, so Red Roof Inns counts his lost income as about $35,000, which when added to the $10,000 in out-of-pocket costs falls only $30,000 short of the jurisdictional minimum. A modest allowance for pain, suffering, and future losses (either income foregone or medical expenses incurred) brings the total over the threshold. Counsel's estimate that the stakes are more than double the jurisdictional minimum shows, Red Roof Inns maintains, that pain, suffering, and future loss cannot be dismissed as negligible. The district court agreed and denied Rising-Moore's motion to remand. 2004 U.S. Dist. LEXIS 11748 (S.D. Ind. Mar. 30, 2004).

The complaint filed in state court does not reveal how much Rising-Moore wants as damages. Indiana no longer allows pleadings to do so. Ind. Trial R. 8(A)(2). All too many litigants had made whopping demands in order to generate publicity; Indiana concluded that the best way to curtail this practice is to forbid any statement about how much money the plaintiff seeks. In a system of courts having general jurisdiction, that makes a great deal of sense; it does not mesh well, however, with federal jurisdiction, because removal in diversity suits under 28 U.S.C. §1332 depends on the amount in controversy. When the complaint includes a number, it controls unless recovering that amount would be legally impossible. *St. Paul Mercury*

*Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938). When the complaint omits a number, however, the size of the claim must be evaluated in some other way.

A defendant who removes a suit in which the complaint lacks an *ad damnum* must establish a "reasonable probability" that the amount in controversy exceeds $75,000. See, e.g., *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427-28 (7th Cir. 1997). The burden of persuasion rests on the removing party, see *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), but once this demonstration has been made the rule of *St. Paul Mercury* kicks in. A removing party need not show that the plaintiff will *prevail* or collect more than $75,000 if he does. The burden, rather, is to show what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold. See *Brill*, 427 F.3d at 449; *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350 (7th Cir. 1995).

Rising-Moore's lawyer has revealed what he thinks his loss amounts to: between $180,000 and $200,000. This is the amount "in controversy." In this court, Rising-Moore dismisses this figure as one offered early in the negotiations; the settlement demand of $160,000 receives similar treatment, coupled with a plea that it be ignored given Fed. R. Evid. 408, which provides that offers in compromise generally are inadmissible. If the court is to look at the parties' negotiations, Rising-Moore insists, it should give principal weight to his offer to settle for $60,000 while the motion for summary judgment was pending. Although post-removal events—even an irrevocable promise not to accept more than the jurisdictional minimum—do not authorize remand of a suit that was within federal jurisdiction when removed, see *St. Paul Mercury*, 303 U.S. at 293, Rising-

Moore contends that the $60,000 offer shows his real aims and demonstrates that the dispute between the parties never exceeded $75,000.

Rule 408 says that a settlement offer is not admissible "to prove liability for or invalidity of the claim or its amount." Red Roof Inns did not use the offers to show either its own liability or the "invalidity" of Rising-Moore's claim. Instead it used them to show the stakes, a question independent of the claim's merit. The district court thus was entitled to take account of the offers, and perforce of counsel's pre-offer estimate that a jury would value Rising-Moore's injury at $180,000 or up. The $180,000 to $200,000 estimate is close in spirit to the *ad damnum* in a complaint; it makes sense to give it the same legal status. That the complaint is "early" in the case, and precedes discovery, does not diminish the jurisdictional effect of the demands it contains; no more does the timing of counsel's estimate rob it of consequence. Rising-Moore does not contend that it would be impossible for a jury properly charged under Indiana law to find damages exceeding $75,000 and did not seek an evidentiary hearing under Fed. R. Civ. P. 12(b)(1) at which the parties could present evidence about what he "really" wants. For a high-income plaintiff such as Rising-Moore, an award over the threshold cannot be ruled out. Thus the case belongs in federal court.

To the extent that any event after the date of removal can shed light on the jurisdictional question, the willingness to accept $60,000 supports a conclusion that the "controversy" exceeds $75,000. Rising-Moore did not offer to take $60,000 if a jury should decide in his favor and nothing otherwise; he wanted $60,000 *with certainty*, which implies that the stakes at trial comfortably exceed the minimum. Plaintiffs win about half of all tort suits that go to trial. See Seth A. Seabury, Nicholas M. Pace & Robert T. Reville, *Forty Years of Civil Jury Verdicts*, 1 J. Empirical Legal Studies 1, 9-10 (2004); Thomas H. Cohen, *Tort Trials and Verdicts in Large*

*Counties, 2001* (Bureau of Justice Statistics Nov. 2004); see also George L. Priest & Benjamin Klein, *The Selection of Disputes for Litigation*, 13 J. Legal Studies 1 (1984) (providing a theoretical explanation why this should be so). If Rising-Moore had a 50% likelihood of a $120,000 verdict at trial, he would offer to accept $60,000 with certainty, which has the same expected value; both sides then could save legal expenses. If he is risk averse, he would be willing to accept less than half of the anticipated award: then an offer to take $60,000 might imply that the stakes were $150,000. If his lawyer had private knowledge suggesting that the chance of prevailing was less than 50%, then the anticipated verdict implied by the offer (if a jury found in plaintiff's favor) would be even higher. So, for example, a risk-averse plaintiff who thought that he had a one-in-three chance of winning $200,000 at trial would take a sure $60,000 happily. Only if Rising-Moore were risk-neutral and had more than an 80% chance of winning a favorable verdict would the $60,000 offer imply that the full controversy is under $75,000. Given the district judge's belief that Rising-Moore has no chance of prevailing before a reasonable jury, that hardly seems likely.

Only brief mention of the merits is required; the district judge has said everything that needs saying on this score. Indiana does not make land owners absolutely liable for falls on their property. See *Hammond v. Allegretti*, 262 Ind. 82, 88, 311 N.E.2d 821, 826 (1974). With respect to winter storms, in particular, Indiana does not require immediate removal of snow or ice. *Hammond*, 262 Ind. at 88. Although *Rossow v. Jones*, 404 N.E.2d 12 (Ind. App. 1980), held that a week is too long to wait, action within shorter times (such as at daybreak during a storm, or soon after a storm ends) has been treated as reasonable diligence. See *Orth v. Smedley*, 378 N.E.2d 20, 23 (Ind. App. 1978) (dictum). Red Roof Inns did not wait a week, or even overnight. As Rising-Moore tells the tale, the path was clear

and dry when he entered and slippery (because of an ongoing ice storm) when he left the motel's office about 15 minutes later. Only a duty of continuous monitoring and clearing during a winter storm would make an owner liable under these circumstances, and there is no such duty in Indiana.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*