In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3921

GAETANO "TOM" ALIOTO,

*Plaintiff-Appellant,*

*v.*

TOWN OF LISBON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-752—**J.P. Stadtmueller**, *Judge*.

ARGUED FEBRUARY 25, 2011—DECIDED JULY 7, 2011

Before EASTERBROOK, *Chief Judge*, and FLAUM and
ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge*. Gaetano "Tom" Alioto filed a
lawsuit against Wisconsin's Town of Lisbon, its adminis-
trator, and the chief of its police department. Alioto
maintains that, among other things, the defendants de-
famed him, subjected him to a hostile work environment,
and violated his due process rights. According to the
complaint, whose well-pleaded allegations we accept as

true, Alioto suffered political payback after he spear-headed an inquiry into allegedly unethical activities of police chief Terry Martorano. The chief survived the investigation and—along with town administrator Jeffrey Musche—exacted revenge on Alioto.

The district court dismissed the case, and the reason it provided for granting the motion effectively eliminates Alioto's chances on appeal. When the defendants moved to dismiss the complaint, Alioto did not file a response brief that met defendants' arguments. Instead, he only sought leave to amend the complaint based on the (incorrect) belief that complaints need to state legal theories. The district court did not err when it denied Alioto's motion for leave to amend; by failing to respond to the other arguments that the defendants had advanced in favor of dismissal, Alioto waived his right to appeal the dismissal order. Accordingly, we affirm the judgment of the district court.

## I. Background

Gaetano Alioto was a sergeant with the Town of Lisbon Police Department. He was second in command to police chief Terry Martorano. In 2006, two of the town's supervisors asked Alioto to investigate the chief. Alioto was tasked with determining whether Martorano was defrauding the town. In particular, the question was whether the latter was "double-dipping"—submitting time sheets to the town for time periods when he was in fact working as security guard. (Martorano had two jobs as a security guard, one at a jewelry store and another

at Carroll College.) Upon learning of the investigation, Martorano warned Alioto, "[I]f you are coming after me, I am going to get you."

Alioto appears to have pressed on, submitting a report to the town in April 2006. The report must have implicated Martorano in wrongdoing, because the chief was placed on administrative leave a few days later. Alioto was made acting chief. At that point, the town hired an independent investigator to conduct follow-up on Alioto's report. Although the independent investigator substantiated the report's findings, the town gave Martorano his job back—under threat of a lawsuit, it seems.

After resuming his post, Martorano worked with the town administrator, Musche, to exact revenge on Alioto for the investigation. Some of the allegations made in the complaint amount to minor slights that would do little to make out a plausible due process claim for constructive discharge, which is the theory Alioto ultimately settled on, *see Witte v. Wisconsin Dep't of Corrections*, 434 F.3d 1031, 1035 (7th Cir. 2006), but others start to provide scaffolding for a lawsuit. Among the more serious allegations, Alioto contends that Martorano made defamatory statements to the press and lied to the district attorney in an effort to have baseless criminal charges brought against Alioto. The effort worked. The D.A. told Alioto that no charges would be brought if he resigned and, when he refused, charged him. According to the complaint, a state judge later dismissed the case for want of probable cause.

In October 2006, Alioto took the advice of his personal physician; because of the stress of the work environment and all that attended it, he took medical leave from the police department. When, in May 2007, he wanted to return, the town required him to submit a medical release. Alioto complied, but Martorano told Alioto that the release was not sufficiently "descriptive" and demanded another one. Again Alioto obliged, but again the defendants would not let Alioto return to work. They imposed an additional requirement that Alioto undergo a fitness-for-duty evaluation by someone they selected. The evaluator indicated that Alioto was not fit to return to duty; the latter never returned to work. (In December 2007, the town disbanded its police department, having decided to contract with the Waukesha County Sheriff's Department for police services. Alioto was not invited to join that police force.)

Alioto filed his lawsuit in state court in July 2008, and the defendants removed the case to federal court two months later. The complaint eschews chronology or any other logical basis of organization. It consists of large, numbered paragraphs whose language is rather difficult to follow. Nonetheless, it made the allegations outlined above, even if understanding the allegations takes some effort, and defendants did not file a motion for a more definite statement or to have the allegations grouped into counts. (As they might have. *See* Fed. R. Civ. P. 10(b) & 12(e).) In any event, the defendants filed answers shortly after they removed the case to federal court. In June 2009, the defendants filed motions to dismiss the complaint (the town and Musche together; Alioto sepa-

rately) for failure to state a claim upon which relief can be granted. The defendants styled them Rule 12(b)(6) motions, but in reality the motions were for judgment on the pleadings, Fed. R. Civ. P. 12(c), because the defendants filed answers. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(2)(B) (a motion for failure to state a claim may be brought in a Rule 12(c) motion). The misstyling does not alter our analysis. *See also McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006).

According to the brief in support of the motion filed by the town and Musche, Alioto's complaint was deficient at the outset because it did not cite the specific constitutional provisions or rights that the defendants were alleged to have violated—the complaint merely indicated that "42 U.S.C. § 1983 constitutional rights" were violated. In addition, the brief measured the sufficiency of the allegations in the complaint against the standards for claims under the Fourteenth Amendment's due process clause, its equal protection clause, the First Amendment's freedom of speech clause, Title VII of the Civil Rights Act of 1964, and several state-law torts. Unsurprisingly, the town and Musche found the allegations wanting, for reasons that they spelled out in their brief. They also contended that, as to any constitutional claims Alioto was making, Musche was entitled to qualified immunity and that there was no basis for imputing Section 1983 liability to the town under *Monell v. Dep't of Soc. Servs. of the City of New York*,

436 U.S. 658 (1978). Martorano's brief in support of his motion to dismiss generally echoed the substance of his co-defendants' brief. His brief, too, maintained that, as a pleading requirement, "a plaintiff is required to pinpoint the specific constitutional right that was allegedly violated."

Several weeks after the defendants filed their motions to dismiss, Alioto filed an agreed motion setting a briefing schedule. He requested until August 6 (a little over two months) to file a response brief. The district court agreed. When August 6 arrived, however, Alioto filed a motion for leave to file an amended complaint. The proposed amended complaint is much easier to follow than the original. The former abandoned any claim of a hostile work environment as well as state-law tort claims. It added a claim for overtime wages and alleged a violation of his right to free association. In support of his motion for leave to file the amended complaint, Alioto filed a brief styled, "Plaintiff's Combined Brief in Support of Motion for Leave to Amend Pursuant to F.R.C.P. 7(b) and in Response to Defendants' Motions to Dismiss." Yet the brief did little to address the defendants' arguments about the sufficiency of Alioto's original complaint. The brief spanned just over five pages and devoted itself almost exclusively to its request for leave to file the amended complaint. Indeed, the response brief responded to only one of the shortcomings that the defendants had said marked Alioto's complaint—and only by way of an at-once tacit and incorrect concession: "Defendants attacked plaintiff's original Complaint for an alleged failure to cite any

violation of constitutional rights. The proposed Amended Complaint specifically lists those constitutional rights which plaintiff alleges have been violated and how the defendants' conduct violated those rights" (citations omitted). The non-responsive response brief did not address the defendants' arguments about *why* the complaint's allegations failed to state claims under state and federal law.

The district court granted the defendants' motions to dismiss and denied Alioto's motion for leave to amend his complaint. The district court noted that Alioto sought leave to amend his complaint well after the deadline set out in the court's scheduling order and ruled that Alioto had not established good cause under Rule 16(b) for leave to modify the scheduling order and amend the complaint. In addition, the district court ruled that Alioto forfeited[1] his opportunity to oppose the defendants' motions to dismiss by failing to respond to the arguments in support of those motions.

## II. Discussion

The district court correctly ruled that Alioto was required to show good cause in order to amend his com-

---

[1] Consistent with our precedent, we use the word waive, although forfeit is perhaps the more accurate term. *E.g., United States v. Charles*, 476 F.3d 492, 495 (7th Cir. 2007) (explaining that waiver is voluntary while forfeiture is the result of an unintentional relinquishment of a right).

plaint; the court did not abuse its discretion in concluding that Alioto failed to meet that standard. *See Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 978 (7th Cir. 2000). As to the defendants' motion to dismiss the complaint, Alioto waived his right to contest the dismissal by failing to oppose the motions. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005).

## A. Alioto's Motion for Leave to Amend

Generally, a motion for leave to amend a complaint is evaluated under Federal Rule of Civil Procedure 15(a)(2). That rule provides that courts "should freely give leave when justice so requires." *See also Soltys v. Costello*, 520 F.3d 737, 742-43 (7th Cir. 2008) (discussing the standard). However, the rule is in some tension with the rule that governs scheduling orders, Federal Rule of Civil Procedure 16. Under the rule, district courts are generally required to issue scheduling orders in their cases as soon as practicable. Fed. R. Civ. P. 16(b)(2). And courts are required in a scheduling order to set a deadline for filing amended pleadings. Fed. R. Civ. P. 16(b)(3)(A). In this case, the district court read its scheduling order as requiring amended pleadings to be filed by the end of November 2008. Alioto does not question that interpretation. Therefore, the district court was entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied. We put the imprimatur on that approach in our decision in *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*,

424 F.3d 542, 553 (7th Cir. 2005). The two-step process is consistent with nearly every one of our sister circuits (and out of step with none). *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *S&W Enters., LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th Cir. 2011); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Sosa Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); *see also United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (reserving the issue of whether, once a scheduling order has been entered, Rule 16 applies before the standards of Rule 15 are considered).

The district court did not did not abuse its discretion in concluding that Alioto failed to establish good cause for modifying the scheduling order. In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment. *Trustmark*, 424 F.3d at 553; *see also* 3 MOORE'S FEDERAL PRACTICE § 16.14[1][b], at 16-72 (Matthew Bender 3d ed. 2010) ("[A]lthough undoubtedly there are differences of views among district judges about how compelling a showing must be to justify extending the deadlines set in scheduling orders, it seems clear that the factor on which courts are most likely to focus when making this determination

is the relative diligence of the lawyer or lawyers who seek the change."). Alioto offers an insufficiently robust explanation of why he was diligent. He argues chiefly that he had no reason to know that his complaint was deficient until the defendants filed their motions to dismiss the complaint.

That explanation does not pass muster. The requirements for surviving a motion to dismiss are matters of hornbook civil procedure law, and a party should always ask itself whether the complaint it wants to file sets out a viable claim. (If the party does not do so on its own, its lawyer is required to ask that question. Fed. R. Civ. P. 11(b)(2).) Moreover, Alioto acted with insufficient diligence not merely because he waited to seek leave to amend for more than eight months beyond the district court's deadline. He waited until the last day—under a generous briefing schedule—for filing a response to the defendants' motion to dismiss. Indeed, he had defendants' motions to dismiss in his possession for more than two months before seeking leave to amend the complaint. As the 1983 advisory committee note explains, among the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case "moving toward trial." Although the lack of clarity in the complaint made it difficult to perceive precisely what Alioto was alleging, the proposed amended complaint added at least one new theory and overhauled another. In light of Alioto's conduct and the purposes of Rule 16, the district court committed no abuse of its discretion in denying leave to amend. *See Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330,

340 (3d Cir. 2000) (district court did not err in denying leave to amend complaint where plaintiff waited more than six months after the scheduling order cutoff).

## B. Defendants' Motions to Dismiss

Normally, we review without deference a district court's conclusion that a complaint fails to state a claim upon which relief can be granted. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). In this case, however, Alioto failed to meet the myriad arguments set out in the defendants' motions to dismiss. Instead, Alioto sought leave to amend his complaint and responded (by way of concession) to only one of the defendants' arguments—their incorrect position that a complaint must set out specific provisions that have been violated. Although a court may require that allegations be grouped into logical counts for claims that are "founded on" separate transactions or occurrences, *see* Fed. R. Civ. P. 10(b), we have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery. *E.g.*, *Smith v. Med. Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 283 n.2 (7th Cir. 2011); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561-62 (7th Cir. 2011); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error.").

In any event, because the district court did not abuse its discretion in denying Alioto's motion for leave to amend, the briefing gambit of seeking that leave with-

out addressing the defendants' principal arguments undermined Alioto's appeal before it was filed. Long-standing under our case law is the rule that a person waives an argument by failing to make it before the district court. *E.g.*, *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 480 (7th Cir. 2010); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1261-62 (7th Cir. 1987)). We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss. *See Lekas*, 405 F.3d at 614 (noting that a complaint may be compliant with the notice pleading requirements of Rule 8(a)(2) and yet be subject to dismissal where a plaintiff does not file a brief supporting the legal adequacy of the complaint); *Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir. 1990). Moreover, as in *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466-67 (7th Cir. 2010), Alioto doubled down on his waiver by failing to grapple on appeal with that aspect of the district court's order.

As we have noted previously, "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (likening a dismissal of a "nonresponsive response brief" to default judgment). It would have been far wiser for

Alioto to have responded to the defendants' arguments while explaining why, if the court did not accept his contentions, any dismissal should have been without prejudice. He did not do so.

Although Alioto cites two cases in support of his argument that "a motion for leave to amend [an] allegedly deficient complaint is an appropriate response to a motion to dismiss for failure to state a claim," the cases he cites do not support the proposition he advances. The case of *Elliott v. Foufas*, 867 F.2d 877, 883 (5th Cir. 1989), merely remanded a case and in the process directed a district court to consider a motion for leave to amend the complaint. And *Mayes v. Leipziger*, 729 F.2d 605, 607-08 (9th Cir. 1984), dealt with an amendment as a matter of right under Federal Rule of Civil Procedure 15(a)(1). Our case law, too, makes clear that a motion to dismiss under Rule 12(b)(6) is not a responsive pleading and so, if an answer has not been filed, a plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss. *Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008). As we noted above, however, the defendants filed their motions to dismiss under Rule 12(c). Answers had been filed and the time for amending the complaint as a matter of right had long since passed. *Mayes* does not say that filing a non-responsive response brief along with a motion to amend is an "appropriate" response to a motion to dismiss. Given that Alioto no longer retained the right to amend his complaint, *the* appropriate response to the motions to dismiss was to oppose the motions or risk abandoning the litigation.

Finally, we note that our finding of waiver is not altered by the fact that the district court first concluded that Alioto had forfeited his right to respond and then explained its view of why the complaint was nonetheless deficient. Some of the reasoning offered by the district court was incorrect, and Alioto might have made a strong argument for a due process claim in particular. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991) (ruling that a plaintiff lost his right to contest dismissal even where the district court did not rely on a waiver theory). To be sure, our rules on waiver leave us discretion to excuse mishaps, *see, e.g., Jenkins v. Nelson*, 157 F.3d 485, 494 n.1 (7th Cir. 1998), but this appeal does not warrant an act of grace. It is not merely that a court "depend[s] upon counsel to apprise [it] of the issues for decision*." Libertyville Datsun Sales, Inc. v. Nissan Motor Corp. in U.S.A.*, 776 F.2d 735, 737 (7th Cir. 1985). Rather, our system of litigation is premised upon the notion that lawyers, through their participation, will enhance the quality of the ultimate judicial product. *E.g.,* Edward H. Levi, AN INTRODUCTION TO LEGAL REASONING 5 (1949). Our rules on waiver encourage parties to play their critical role. Moreover, allowing litigants to opt out of the adversarial system until appeal would run against the instinct of our judicial system to resolve matters at the trial phase and avoid unnecessary re-mands. *E.g., McLish v. Roff,* 141 U.S. 661, 665-66 (1891). Alioto has not argued why his failure to file a respon-sive brief should be excused. Particularly given that he has been represented by counsel at all times, we will not make an argument for him.

### III. Conclusion

For the reasons set forth above, the judgment of the district court is AFFIRMED.