In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4111

MATTHEW CARROLL,

*Plaintiff-Appellant,*

*v.*

STRYKER CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09-cv-29—**Stephen L. Crocker**, *Magistrate Judge.*

ARGUED JUNE 3, 2010—DECIDED SEPTEMBER 6, 2011

Before MANION, EVANS[*], and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Matthew Carroll was a commis-
sioned sales representative assigned to solicit orders in
Wisconsin for Stryker Corporation ("Stryker"), a medical-
instrument manufacturer based in Michigan. Stryker

[*] Circuit Judge Terence T. Evans died on August 10, 2011, and
did not participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

terminated Carroll's employment in 2008 because he failed to meet his quarterly sales quota. When Stryker refused to pay him a commission he felt he was rightfully owed, Carroll sued Stryker in state court for unpaid wages under Wisconsin's wage-claim statute and alternatively sought recovery under equitable contract doctrines. Stryker removed the action to federal court and later moved for summary judgment, arguing that Carroll was barred from pursuing a statutory wage claim because he worked on commission, and also that equitable contract relief was unavailable because Carroll's compensation was the subject of an express contract.

Carroll responded by voluntarily dismissing his statutory claim and seeking leave to amend his complaint to add a cause of action for breach of contract. The district court entered summary judgment for Stryker, agreeing that Carroll could not recover under any equitable contract doctrine. The court also denied Carroll's motion for leave to amend because the deadline for amending the pleadings had long since passed and no reasonable cause had been shown for the undue delay. Carroll appealed.

At oral argument we noted a possible jurisdictional issue regarding the amount in controversy. We ordered supplemental briefing and now conclude that the damages Carroll seeks exceed the $75,000 threshold for diversity jurisdiction. *See* 28 U.S.C. § 1332(a). On the merits, we affirm. Although Carroll was an at-will employee, his commission-based compensation was the

subject of an express contract, which under Wisconsin law precludes quasi-contractual relief. The district court did not abuse its discretion in denying leave to amend the complaint because Carroll's motion came unjustifiably late in the litigation, many months after the deadline for amending the pleadings had passed.

## I. Background

In January 2003 Stryker offered Carroll a position as a marketing associate. At that time Carroll signed an employment application reflecting that he was a "terminable-at-will employee" and could be "terminated with or without cause and with or without notice, at any time, at the option of either the company or [himself]." Carroll also signed a confidentiality agreement and an acknowledgment that he had received a copy of Stryker's employee handbook. The receipt stated in part:

> I understand that any previous contracts, policies, or representations relating to my employment are no longer in effect and have been replaced by the Handbook. I understand that the purpose of the Handbook is to inform me of the Company's policies and rules and that no one is authorized to make changes in the terms of this Handbook, except through written revision authorized by Stryker Leibinger's General Manager. Stryker Leibinger may add, change, or rescind any of the policies, benefits, or practices listed, with or without advance notice, at the discretion of management.

> Except for the paragraph below [dealing with a six-
> month limitation on lawsuits after termination],
> I understand that nothing contained in the Handbook
> constitutes an employment contract between the
> Company and me. I understand that my employment
> can be terminated with or without cause and with
> or without notice by the Company or by me.

In 2005 Stryker promoted Carroll to commissioned sales representative and in 2006 assigned him to a territory in Wisconsin. Every year Stryker sent a written compensation plan to its commission-based sales staff outlining the company's commission structure. As relevant here, the 2008 compensation plan provided that for the first six months of employment, a commissioned sales representative would receive a monthly draw of $6,000, with commissions paid on a varying percentage basis (depending on applicable discounts) for orders above the draw. Starting at month seven, if a sales representative's commissions did not cover the monthly draw, then the representative would incur a "draw deficit" recoverable by Stryker. The compensation plan also included bonuses for meeting or exceeding sales quotas. The company expressly reserved the right to change the commission compensation plan at any time.

In 2006 and 2007, Carroll's sales totaled less than half of his quota. As a result, for the 2008 calendar year, Stryker placed Carroll on a "performance improvement plan" that required him to meet his year-to-date sales quotas each quarter or face termination. On March 31—the last day of the first quarter of 2008—Carroll's sales

were still under his quarterly quota, but he had a sale in progress with Aurora Health Care ("Aurora") that might allow him to meet his quota and save his job. That day Carroll emailed an Aurora purchase order to his supervisor in the amount of $299,008.13. Stryker did not accept this order, however. Aurora had proposed substantial modifications to Stryker's standard terms and conditions, most of which were unacceptable to Stryker. In particular, Aurora demanded 120 days to pay, while Stryker normally required payment to be made within 30 days. Also, Stryker's finance department had advised Aurora that it would have to sign a financing agreement to obtain financing for the order. When presented with this requirement, Aurora refused. Stryker offered a compromise, but Aurora balked again. In the meantime Carroll's supervisor extended his deadline for making his quarterly quota from March 31 to April 1. When it became clear that Aurora would not complete the transaction on terms that were acceptable to Stryker, Stryker informed Carroll that he had not met his quota as required by his performance improvement plan. His employment was terminated on April 2.

After his termination Carroll asked Stryker to treat the Aurora deal as a "contingent order"—a term for an unofficial order that would likely be finalized on a timely basis—so that he could meet his quota, save his job, and receive a commission. Contingent orders were generally not permitted, although sales representatives who were not on performance improvement plans were sometimes given credit for contingent orders toward

the end of the year. Because Carroll was on a performance improvement plan, Stryker declined to treat the Aurora transaction as a contingent order.

Later in April 2008, Stryker resumed negotiations with Aurora through the sales representative who replaced Carroll, but Aurora maintained its refusal to sign a financing agreement. Stryker eventually arranged for financing on terms that put itself on the hook to the financing company if Aurora failed to pay. Stryker accepted Aurora's purchase order on April 30, 2008, and credited Carroll's replacement with the commission.

Carroll sued Stryker in Wisconsin state court for unpaid wages under section 109.03 of the Wisconsin Statutes and also asserted claims for quantum meruit and unjust enrichment. Carroll's complaint sought a little over $67,000 in damages (the commission on the Aurora deal plus a 50% civil penalty authorized by WIS. STAT. § 109.11) in addition to "costs, disbursements, and attorney's fees." Stryker removed the case to federal district court. In the notice of removal, Stryker asserted that the $75,000 threshold for diversity jurisdiction was satisfied by the statutory damages (the commission + the 50% penalty = $67,276.83) plus an award of attorney's fees also available by statute (a demand letter from Carroll's counsel pegged prefiling attorney's fees at $19,105). The docketing sheet accompanying the notice of removal stated that the complaint demanded "$67,276.83, plus attorney's fees."

In its answer, however, Stryker asserted that Carroll could not recover under section 109.03 because the

statute by its terms does not apply to commissioned sales representatives. Stryker asserted that Carroll was informed of this by letter from the Equal Rights Division of the Wisconsin Department of Workforce Development before he filed his suit in state court. The letter pointed Carroll to an alternative statutory cause of action: one under section 134.93 of the Wisconsin Statutes, which governs wage disputes for commissioned sales representatives. After Stryker's answer was filed, the magistrate judge, presiding by consent of the parties, *see* 28 U.S.C. § 636(c)(1), held a scheduling conference and set a deadline for amending the pleadings, which Carroll let pass without seeking leave to file an amended complaint.

Stryker later moved for summary judgment, reiterating its defense that section 109.03 did not apply to commissioned sales representatives. In addition, Stryker contended that Carroll's equitable claims could not proceed because the 2008 compensation plan constituted an express contract regarding Carroll's compensation. Carroll responded by withdrawing his statutory wage claim and later moving to amend his complaint to add a claim for breach of contract. The magistrate judge granted Stryker's motion for summary judgment, holding that equitable contract remedies were unavailable in light of the express contract governing Carroll's compensation. The judge also denied leave to amend the complaint, explaining that Carroll had delayed well beyond the deadline for amending the pleadings and had not shown good cause for waiting so long to seek leave to amend.

## II. Discussion

## A. Jurisdiction

Although neither the parties nor the district court addressed subject-matter jurisdiction, we have an independent obligation to satisfy ourselves that jurisdiction is secure before proceeding to the merits. *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). At oral argument we asked whether it was clear that the $75,000 amount-in-controversy requirement for diversity jurisdiction was met, *see* 28 U.S.C. § 1332(a), and ordered the parties to file supplemental briefs on the matter. Not surprisingly, Carroll argued against federal jurisdiction, while Stryker supported it.

As the party removing the case to federal court, Stryker had the initial burden of establishing by a preponderance of the evidence facts that suggest the jurisdictional amount has been satisfied.[1] *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Once it has made this showing, jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000. *Back Doctors Ltd. v. Metro. Prop. &*

---

[1]   In *Meridian Security Insurance Co. v. Sadowski*, 441 F.3d 536, 539-40 (7th Cir. 2006), we retracted language in previous opinions, beginning with *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), suggesting that the proponent of jurisdiction must "prove" to a "reasonable probability" that jurisdiction exists.

*Cas. Co., Inc.*, 637 F.3d 827, 830 (7th Cir. 2011) ("[T]he estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible."); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815-16 (7th Cir. 2006); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The amount in controversy is evaluated as of the time of removal, *Oshana*, 472 F.3d at 511, although events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed, *Rising-Moore*, 435 F.3d at 816; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002).

If Carroll's damages were measured by reference to the *statutory* claim alone, the "legal certainty" test might kick in to defeat jurisdiction. As the Wisconsin Department of Workforce Development informed both Carroll and Stryker before the suit was filed, section 109.03, Wisconsin's wage-claim statute, was amended in 2003 to specifically exclude commissioned salespersons. So Carroll was not a proper claimant under that statute and could not receive its enhanced recovery of a 50% penalty and attorney's fees. The Department told Carroll that he could potentially file suit under section 134.93, which provides a statutory cause of action to recover payment of commissions owed to independent sales representatives and applies to any sales representative "who is compensated, in whole or in part, by commission." WIS. STAT. § 134.93(1)(b).

The legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction, and for good reason:

District courts should not get bogged down at the time of removal in evaluating claims on the merits to determine if jurisdiction exists. *See Rising-Moore*, 435 F.3d at 816. Nonetheless, removal is obviously improper if jurisdiction never existed in the first place. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). Counting the statutory damages—including the 50% penalty and attorney's fees—toward the jurisdictional amount when the statute by its terms does not apply would rest jurisdiction on a form of recovery that was legally impossible. True, this case does not involve a statutory or contractual cap on damages—common examples of claims that are considered "legally impossible" for jurisdictional purposes. *See Johnson v. Wattenbarger*, 361 F.3d 991, 994 (7th Cir. 2004). But from the face of the statute and Carroll's complaint, it was clear from the beginning that as a sales representative who worked on commission, he could not recover under section 109.03.

But statutory damages are not the sole measure of the amount in controversy in this case. The complaint also demands "wages and other compensation and benefits" as general compensatory damages under the equitable contract doctrines of quantum meruit and unjust enrichment. In its supplemental brief in this court, Stryker supplied evidence of Carroll's damages demand under these doctrines. First, Stryker pointed to a letter from Carroll's counsel sent before the state-court suit was initiated. In it Carroll demanded $41,122.35 in lost commissions, nine months of draw in the amount of $54,000, and prefiling attorney's fees of $19,105, for a

total of $114,227.35 in damages. Minus the attorney's fees, Carroll's damages demand totaled $95,122.35. Moreover, Carroll testified in deposition that he was seeking $50,000 to $60,000 in commissions, $200,000 to $300,000 in lost salary (presumably future salary in the form of commissions), a 10% bonus, a 401K distribution, and $15,000 to $20,000 in attorney's fees.

Finally, during the pendency of the case in federal court, Carroll's counsel sent a settlement offer to Stryker's counsel by email stating that Carroll had reduced his demand from an earlier figure of "$100,000 or more" and would now settle for $60,000 plus certain nonmonetary relief.[2] We also note that the parties agreed in their proposed findings of fact that Carroll was seeking $200,000 to $300,000 in lost wages and that the jurisdictional amount had been met. While litigants cannot create federal jurisdiction where none exists, we take this agreement as further proof that the stakes of the suit exceeded the $75,000 jurisdictional threshold at the time of removal.

This evidence is enough to establish that the jurisdictional amount has been satisfied. In his supplemental

---

[2] Even though settlement offers are inadmissible to prove liability under Rule 408 of the Federal Rules of Evidence, they are admissible to show that the amount in controversy for jurisdictional purposes has been met. *See Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (holding that "the willingness to accept $60,000 [in a settlement] supports a conclusion that the 'controversy' exceeds $75,000").

brief arguing against jurisdiction, Carroll concentrates solely on the subject of statutory damages, ignoring the abundant evidence that the stakes of the suit exceeded the jurisdictional threshold when just the common-law claims are considered. We conclude that Stryker has shown more than the "theoretical availability of certain categories of damages," *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (quotation marks omitted); it has established that "what the plaintiff hopes to get out of the litigation," *Rising-Moore*, 435 F.3d at 816, was well over $75,000. Subject-matter jurisdiction is secure, removal was proper, and we proceed to the merits.

## B.  Quasi-contractual Remedies

We review de novo a district court's grant of summary judgment, construing all facts and reasonable inferences in favor of the nonmoving party. *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009). Stryker argues that under Wisconsin law Carroll cannot invoke the equitable remedies of quantum meruit and unjust enrichment in light of the parties' express contract regarding compensation. Carroll responds that the 2008 compensation plan laying out Stryker's commission structure did not amount to an express contract because he did not sign it, Stryker reserved the right to modify it, and the receipt for the employee handbook disclaimed the existence of a contract.

In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action

grounded in equitable principles and can be invoked only in the absence of an enforceable contract. *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476 (7th Cir. 2009); *Meyer v. Laser Vision Inst.*, 714 N.W.2d 223, 230 (Wis. Ct. App. 2006) (equitable claims barred by express contract); *Greenlee v. Rainbow Auction/Realty Co.*, 553 N.W.2d 257, 265 (Wis. Ct. App. 1996) (doctrine of unjust enrichment does not apply where parties have entered into a valid contract). Where there is an enforceable contract, the proper claim is for breach of contract; quantum meruit and unjust enrichment are unavailable. *See Lindquist Ford,* 557 F.3d at 476; *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 624 n.13 (Wis. 1998); *Schultz v. Andrus' Estate,* 190 N.W. 83, 84 (Wis. 1922) ("Where a valid, express contract is proven, no recovery can be had on an implied contract."). Carroll insists that there was no express contract between the parties.

We have little trouble rejecting this argument. It is undisputed that Carroll was an at-will employee; he had no employment contract. Under employment at will, the "employer may discharge an employee for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." *Tatge v. Chambers & Owen, Inc.*, 579 N.W.2d 217, 222-23 (Wis. 1998) (internal quotation marks omitted). Though he could be discharged at will, his compensation was the subject of an express contract. The 2008 compensation plan spelled out in detail the pay structure for Stryker's commission-based sales representatives. *See Piaskoski & Assocs. v. Ricciardi*, 686 N.W.2d 675, 679 (Wis. Ct. App. 2004) (listing the three basic requirements for a con-

tract: offer, acceptance, and consideration); *Petersen v. Pilgrim Vill.*, 42 N.W.2d 273, 274 (Wis. 1950) ("An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." (quotation marks omitted)). The parties manifested their consent to be bound by the compensation plan when Carroll continued to work for the company after receiving it, and Stryker paid him in accordance with its terms until he was terminated. *Ricciardi*, 686 N.W.2d at 679 (holding that "[o]ffer and acceptance exist when the parties mutually express assent"). This exchange of services for pay also supplied the consideration. *See Wis. Dep't of Revenue v. River City Refuse Removal, Inc.*, 729 N.W.2d 396, 408 (Wis. 2007) (defining consideration as either a benefit to the promisor or a detriment to the promisee).

That Carroll did not sign the plan doesn't mean it's not a contract. Carroll accepted the 2008 compensation plan by performing under its terms, and the lack of his signature does not defeat this acceptance by performance. *See Chudnow Constr. Corp. v. Commercial Disc. Corp.*, 180 N.W.2d 697, 698 (Wis. 1970) (explaining that a contract may be effective even though it is not signed by parties). Nor is the contract illusory because Stryker reserved the right to change the terms of payment in the future. A promise is illusory and thus unenforceable only where one party "assumes no detriment or obligation" and therefore has given no consideration. *Devine v. Notter*, 753 N.W.2d 557, 559 (Wis. Ct. App. 2008). Here, Stryker undertook an obligation to pay Carroll

in accordance with the terms of the compensation plan as long as the plan was in force. A contract can be modified by future agreement, *see Lakeshore Commercial Fin. Corp. v. Drobac*, 319 N.W.2d 839, 845 (Wis. 1982), and Stryker's reservation of the right to modify the pay plan does not make this an illusory contract. The company agreed to pay for services performed in accordance with the compensation plan's terms while the plan was in effect. If Stryker had exercised its right to modify the commission structure, Carroll would have had an opportunity to accept the new terms by continuing to work for the company.

Finally, we reject Carroll's argument that the receipt he signed when he accepted a copy of the employee handbook disclaimed the existence of any contract between the parties. Carroll is misreading both the receipt and the employee handbook. The receipt simply acknowledged that the handbook was meant "to inform me of the Company's policies and rules," and cautioned that "nothing contained in the Handbook constitutes an employment contract" and "any previous contracts, policies, or representations . . . are no longer in effect and have been replaced by the Handbook." The receipt was thus a straightforward acknowledgment of the handbook's purpose: It was not an employment contract but rather a statement of the company's workplace policies and practices. By all accounts nothing in the receipt or the handbook sheds any light on whether the compensation plan is an enforceable contract; neither the receipt nor the handbook itself specifies payment schedules for Stryker's commission-based em-

ployees.[3] Accordingly, we agree with the magistrate judge that Stryker's 2008 compensation plan constitutes an express contract and Carroll may not recover under the quasi-contractual doctrines of quantum meruit or unjust enrichment.

## C. Denial of Leave to Amend Complaint

We review a district court's denial of leave to amend the complaint for abuse of discretion and "reverse only if no reasonable person could agree with that decision." *Schor v. City of Chicago*, 576 F.3d 775, 780 (7th Cir. 2009). The magistrate judge denied the motion to amend because Carroll had no good cause for missing the deadline established in the scheduling order and the undue delay prejudiced Stryker.

Carroll sought leave to amend his complaint more than seven months after the deadline for amending the pleadings, less than a month before discovery was to close, and eleven days after Stryker had filed its reply to Carroll's opposition to its motion for summary judgment. Carroll's counsel insists that he did not fully understand Stryker's argument that quasi-contractual causes of action were unavailable until after Stryker had filed

---

[3] While the parties did not include a copy of the employee handbook in the record, no one has suggested that it contained specific salary schedules for any of Stryker's employees. At oral argument Carroll's counsel acknowledged that it probably did not.

its reply brief in support of its motion for summary judgment. This is doubtful. Stryker had asserted in its answer that quantum meruit and unjust enrichment were unavailable forms of relief, so Carroll was alerted to the basic problem with these claims—and the need for an amended complaint substituting a breach-of-contract claim—at the outset of the federal proceedings.

Regardless, ignorance is hardly a valid reason for missing the deadline by so many months; the failure to anticipate an obvious and legally well-grounded defense does not excuse the delay. More than a month before the deadline for amending the pleadings, our decision in *Lindquist Motors* explained in some detail the conceptual and remedial distinctions between contract and quasi-contractual claims under Wisconsin law. 557 F.3d at 476-81. Accordingly, the magistrate judge reasonably denied Carroll's motion for leave to amend based on his lack of good cause for missing the deadline and the prejudice to Stryker of allowing an amended complaint so late in the day. *See Alioto v. Town of Lisbon,* No. 09-3921, 2011 WL 2642369, at *3 (7th Cir. July 7, 2011) (explaining the interplay between the requirements of Rule 15(a) pertaining to amendments to pleadings and Rule 16(b)(4) pertaining to modifications of scheduling orders); *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005) (same).

AFFIRMED.