NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 25, 2013[*]
Decided March 19, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-2715 | Appeal from the |
| | United States District Court for the |
| SANDRA R. PETERS, | Northern District of Indiana, |
| *Plaintiff-Appellant,* | South Bend Division. |
| | |
| *v.* | No. 3:07 CV 631 |
| | |
| WAL-MART STORES EAST, LP, | James T. Moody, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Sandra Peters, a black female, sued her employer, Wal-Mart Stores East, LP under Title VII of the Civil Rights Act of 1964, alleging discrimination based on race and sex and retaliation related to her working conditions. Late in the lawsuit, Wal-Mart fired Peters for not coming to work, and she sought to amend her complaint to allege a claim for discriminatory termination. The district court denied the request. Wal-Mart then moved

---

[*]After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Therefore the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

for summary judgment and persuaded the district court to strike Peters's untimely response to that motion and enter summary judgment dismissing all claims. Peters appeals the summary judgment and also challenges the district court's procedural decisions to strike her late response and deny her motion to amend.  We affirm.

Peters complains about multiple employment actions running from 2005 through 2007. We begin with her shift assignment and pay level. Peters began working as an overnight stocker in Wal-Mart's clothing department in July 2005. Wal-Mart paid her $12.85 per hour, slightly above the hourly wage of $12.75 that she earned at her previous job at Sam's Club, a Wal-Mart subsidiary. Wal-Mart raised her pay to $13.25 per hour a month later based on her positive final performance review from Sam's Club. But she complained to Wal-Mart that her raise should have been more generous. A few months later, Peters learned that her store was hiring a support manager. Wal-Mart's policy is to promote applicants based on their qualifications, not just seniority. Peters did not apply for the position because a supervisor told her that the application deadline had passed. Travis Powell, a white man who applied for the position but had less seniority than Peters, was hired for the position.  Later, Peters asked to transfer off her overnight shift, but Wal-Mart denied her request.  The company allowed another overnight stocker, Athenia Cook, to modify her schedule during the school year to care for her special-needs child; Cook is white.

Peters claims to have suffered both emotional and physical injuries at work.  In late 2006 she received some racist prank calls while on duty. Because prank calls are common during overnight shifts, Wal-Mart posted a notice next to the phones instructing employees how to track the calls. If an associate received a prank call, she was to dial *57 to determine the call's origin. Peters did not follow the procedure, however, and management was unable to trace the calls. Peters also injured her back early in 2007 while grabbing a rack of clothing that a coworker had knocked over. After Peters contacted management for medical attention, Wal-Mart required her to take a drug test—a routine practice under the company's workplace injury policy.

Peters periodically clashed with coworkers and managers from 2006 through 2007. On one occasion Cook and Peters fought over who should assist a customer. Their immediate supervisor, Rodney Shoaf, intervened.  Shoaf and Cook are white; Peters claims that Shoaf scolded her, but not Cook, in front of others. Peters complained to Wal-Mart in September 2006 and to the Equal Employment Opportunity Commission two months later that Shoaf's reprimand was race-biased. Later, in 2007, Shoaf privately reprimanded Peters for poor productivity, refusing to assume extra assignments, and poor attendance. Peters vigorously objected to one of these reprimands, so much so that two managers had to intervene to try to calm her; she eventually stormed out of the store. Later that month,

Peters and Shoaf again argued about Peters's lack of productivity. Peters insisted that poor health interfered with her performance and eventually took a medical leave for post-traumatic stress disorder. Four months after taking leave, Peters applied for worker's compensation benefits, asserting that her post-traumatic stress disorder was work-related. Wal-Mart's independent claims administrator denied the claim because her medical records during her leave established that her condition was not work-related.

Peters sued Wal-Mart in 2007 for discrimination based on race and sex, and also asserted claims for retaliation and hostile-work environment. Based on the events we have recounted above, she alleged that Wal-Mart kept her hourly pay low, refused to promote her to support manager, refused to change her work shift, and required her to take a drug test after she hurt her back at work. She also claimed that the prank calls, Shoaf's intervention in her dispute with Cook, and his reprimands amounted to a hostile-work environment and caused her post-traumatic stress disorder. All these employment actions, she claimed, were motivated by discrimination based on race and sex. Peters also alleged that Wal-Mart retaliated against her for filing a charge of racial bias in 2006.

The district court set several case-management deadlines under Federal Rule of Civil Procedure 16(b) and specifically warned the parties that the schedule must be followed. The deadline to amend pleadings was November 30, 2008; discovery closed in April 2009; and July 2010 was the last day for dispositive motions. In December 2009 Wal-Mart fired Peters for failing to return to work after her medical leave ended. Seven months later, in June 2010, Peters sought to amend her complaint to add a claim for wrongful termination. She argued that adding this claim would not prejudice Wal-Mart. At around the same time, Wal-Mart moved for summary judgment. Peters responded to that motion eight days after the court's 28-day deadline had expired and waited three more weeks to seek leave to file the late response, explaining that she had relied on an old version of Rule 6(a) that she thought gave her more time.

The district court granted Wal-Mart's motion for summary judgment, denied the motion to amend, and struck the late response brief. On the procedural motions, the court observed that Peters did not adequately explain why she waited over six months after her discharge to seek permission to amend her complaint. The court also noted that Peters failed to explain her mistaken reliance on an outdated version of Rule 6(a). On the merits the court granted the motion for summary judgment for several reasons: (1) the denied shift change, the drug test, the added work assignments, and the reprimands were not materially adverse employment actions; (2) Wal-Mart did not limit her pay or deny her worker's compensation claim based on any prohibited ground; (4) the failure-to-promote claim failed because Peters never applied for the manager position; and (5) the claim of a hostile work environment failed because the prank calls were isolated and no evidence

suggested that Shoaf was motivated by racial or sex-based bias when he intervened between Cook and Peters.

On appeal Peters argues that the district court erred in granting summary judgment for Wal-Mart on her discrimination, retaliation, and harassment claims. She focuses first on three incidents that she says are evidence of discrimination: (1) Wal-Mart's failure to promote her to the support-manager position; (2) its decision not to transfer her to an earlier shift; and (3) its enforcement of its drug-testing policy against her after she was injured on the job. But none of these incidents constitutes unlawful discrimination. Peters admits that she did not apply for the support-manager position, and this dooms her prima facie claim for failure to promote. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)*; Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). Wal-Mart's refusal to allow Peters to change shifts is not unlawful because schedule assignments generally are not adverse employment actions. *See Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012). Moreover, to the extent that Wal-Mart treated Peters differently than Cook, Peters offers no evidence that the difference in treatment was racially motivated; the undisputed evidence shows that Wal-Mart's decision to allow Cook to change shifts was based on the needs of Cook's child, not race. Finally, Peters has not offered any evidence that Wal-Mart applied its drug-testing policy to her for any reason other than that it was standard policy when an employee is injured at work. *See Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997, 1002 (7th Cir. 2000).

Peters next addresses her retaliation claims, but summary judgment was proper here, too. Her principal argument is that Wal-Mart denied her worker's compensation claim because she had filed a discrimination complaint against the company. But Peters supplies no evidence that anyone at the third-party firm that processed her worker's compensation claim knew about her discrimination charge, so her charge of discrimination could not have affected the decision to deny the claim. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668–69 (7th Cir. 2006) (affirming summary judgment on applicant's retaliation claim when applicant failed to show that potential employer knew he had filed a Title VII complaint).

Her other allegations of retaliation fare no better. Peters contends that after she transferred from Sam's Club in 2005, Wal-Mart kept her pay low because she complained about her hourly wage. Although Peters did complain about her pay, she has produced no evidence that these complaints were based on her race or sex. Internal complaints constitute protected activity under Title VII only if the employee complains of discrimination on an impermissible ground. *See Keeton v. Morningstar, Inc*., 667 F.3d 877, 885 (7th Cir. 2012)*; Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011)*; Casna v. City of*

*Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). It is true that near the end of 2006, Peters did charge Shoaf with racial discrimination, but Peters offers no evidence that after she lodged that complaint, Wal-Mart paid comparable workers more. Finally, to the extent that the retaliation claim focuses on added work assignments and reprimands for poor performance, it necessarily falls short; additional work assignments and negative evaluations are not, without more, materially adverse employment actions. *See Lapka v. Chertoff,* 517 F.3d 974, 986 (7th Cir. 2008) (concluding that more difficult or time-consuming work assignments and decreased performance ratings were not materially adverse employment actions absent tangible job consequences).

Peters also rehashes her allegations of racial harassment, but again fails to establish a prima facie case. To survive summary judgment, Peters needed to submit evidence that the reprimands, Shoaf's intervention in the argument between her and Cook, and the prank calls created a hostile work environment for which liability could be imposed on Wal-Mart. *See Williams v. Waste Mgmt. of Ill.,* 361 F.3d 1021, 1029 (7th Cir. 2004). There is no evidence that the reprimands were race-based. *See Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 302–03 (7th Cir. 2004). Also, Shoaf's discipline of Peters for arguing with Cook was an isolated incident and therefore not pervasive or severe enough to constitute an objectively hostile work environment. *See id.* at 303; *Smith v. Ne. Ill. Univ.,* 388 F.3d 559, 566–67 (7th Cir. 2004); *Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263, 271–72 (7th Cir. 2004); *Williams,* 361 F.3d at 1029. Finally, Wal-Mart is not liable for the harassing calls Peters received from unknown callers because the company provided a procedure for associates to track any such calls, but Peters did not follow it. *See Lapka,* 517 F.3d at 984; *Williams,* 361 F.3d at 1029.

Peters next challenges the district court's procedural ruling denying her motion for leave to amend her complaint to add a wrongful-discharge claim. Because the deadline for amending the pleadings had passed more than a year and half earlier, Peters first had to show good cause to modify the scheduling order; only then does the general standard of Rule 15(a)(2) apply. *See* FED. R. CIV. P. 16(b)(4); *Alioto v. Town of Lisbon,* 651 F.3d 715, 719 (7th Cir. 2011)*; Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir. 2005). Peters insists that Wal-Mart would not have been prejudiced by an amendment because it still had six weeks to file dispositive motions and the court could reopen discovery. But the good-cause standard focuses on the diligence of the party seeking amendment, not the prejudice to the nonmoving party. *Alioto,* 651 F.3d at 720; *Trustmark,* 424 F.3d at 553. Peters does not explain why she delayed seven months after Wal-Mart fired her to propose her new claim. This would have been her seventh amended complaint, and the motion came very late in the litigation. The district court did not abuse its discretion in denying her motion to amend. *See Alioto,* 651 F.3d at 720; *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011); *Carroll v. Stryker Corp.,* 658 F.3d 675, 684 (7th Cir. 2011).

Finally, Peters insists that the district court erred in striking her response to Wal-Mart's motion for summary judgment. She argues that she relied on an old version of Rule 6(a) and this amounts to "excusable neglect" under Rule 6(b)(1)(B). Generally, the failure to apprehend the operative federal rules is no excuse for noncompliance. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 392 (1993); *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005); *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133–34 (7th Cir. 1996). Although misinterpreting an ambiguous rule might be excusable, *see Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008); *Prizevoits,* 76 F.3d at 134, Peters does not contend the rule contained an ambiguity. Rather, she argues that Wal-Mart was not prejudiced. But prejudice is only one of the relevant factors under the *Pioneer* analysis. The others are the duration and reasons for the delay; whether the litigant could have controlled the delay; the litigant's good faith; and the impact on the proceedings. Those factors do not favor Peters. The older rule merely excluded weekends and holidays from periods under 11 days; Peters had 28 days to respond, so any mistaken reliance on the old rule does not explain the missed deadline. Also, despite the age of the case and the court's explicit warning about compliance with the scheduling order, Peters's counsel inexplicably waited nearly three weeks to seek permission for the late filing, thus undermining any claim of good-faith mistake. Finally, Peters identifies nothing in her stricken response that might have affected the district court's analysis of her claims on the merits. The court did not abuse its discretion in striking the brief. *See Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 539 (7th Cir. 2011); *Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir. 2006).

We have considered Peters's other arguments, and they do not merit discussion. Accordingly, the judgment is **AFFIRMED**.