*In re* ESTATE OF PAUL REIMAN, Deceased (Ilmar Palm-Leis, Ex'r of the Estate of Paul Reiman, Petitioner-Appellant, *v.* Asta Pill *et al.*, Respondents-Appellees).

Fourth District   No. 4—82—0674

Opinion filed June 8, 1983.

Walden, Cole, Ohlsen & Coryell, of Decatur (Robert W. Ohlsen, of coun-

sel), for appellant.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, and Spitzer, Addis, Susman & Roskin, of Chicago, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Petitioner Ilmar Palm-Leis (Executor), appeals from a judgment granting summary judgment to respondents Anna Reiman and Asta Pill on their counterpetition for the construction of the last will and testament of Paul Reiman. The effect of that judgment is that most of the estate must pass through intestate succession to decedent's heirs. We affirm.

Paul Reiman died testate on January 9, 1981, leaving as his only heirs at law his mother, Anna Reiman, and his sister, Asta Pill. Each heir resides in Estonia, U.S.S.R., and was notified that Reiman's last will and testament had been admitted to probate by written notice required by section 6—10 of the Probate Act of 1975. Ill. Rev. Stat. 1979, ch. 110½, par. 6—10.

After the will was duly admitted to probate, Palm-Leis was awarded letters testamentary and filed a petition for will construction in the circuit court seeking a judicial determination of the effect of paragraph 4 of the last will and testament of Reiman. The will is a one-page instrument with only five operative paragraphs. Paragraph 1 provides for payment of expenses and debts by the executor; paragraphs 2 and 3 are specific bequests of $10,000 to each respondent; and paragraph 5 nominates Ilmar Palm-Leis as executor. The disputed provision, paragraph 4, provides as follows:

"4. My executor hereinafter named, shall execute and administrate this will and shall make all distributions of all my tangible and real property in accordance with the aforegoing paragraphs and the verbal guide lines last given by me, and in accord with his best judgment."

The petition for will construction prayed that paragraph 4 be construed as a general power of appointment in favor of the executor so as to avoid a partial intestacy. The heirs filed an answer to the petition, and counterpetitioned the court to declare paragraph 4 an improper testamentary disposition in violation of the statute of wills and to strike it accordingly. They then filed a motion for summary judgment praying that an order issue rejecting the construction of the executor, that the court find the verbal guidelines provision to be void and paragraph 4 an invalid trust for failing to create enforceable rights in ascertainable beneficiaries, and prayed that the residue of

the estate be distributed in accordance with the law of descent and distribution. See Ill. Rev. Stat. 1981, ch. 110½, par. 2—1.

Before the court ruled on the motion for summary judgment, the executor filed a motion for hearing, requesting the court to take testimony on the circumstances surrounding the will's execution, including decedent's relationship with the executor, the effect of a distribution to the heirs who live behind the Iron Curtain, and decedent's relationship with his heirs at law. The trial court entered a written order granting the heirs' motion for summary judgment and denying the executor's motion for hearing. The court found paragraph 4 to be in violation of the statutory requirements for making wills and an incomplete trust since it failed to specify enforceable rights in ascertainable beneficiaries. The court explicitly rejected the executor's argument that a general power of appointment was created, finding instead that the testator's intention was to create a trust with the executor as trustee. The court ordered that the estate, except the two specific bequests, be distributed to the testator's heirs at law in accordance with Illinois law.

On appeal, the executor's central argument is that paragraph 4 created a valid testamentary general power of appointment in his favor. The heirs advance the same arguments here as below, and raise further the issue that the petitioner has no standing to prosecute this appeal as executor when the relief requested by him would benefit him individually.

No argument has been made by the executor that the direction to him to distribute in accordance with the testator's verbal guidelines as provided in paragraph 4 is a valid testamentary disposition. No such argument could, in fact, be made since it is fundamental that any disposition by way of verbal guidelines is prohibited by section 4—3 of the Probate Act of 1975. Ill. Rev. Stat. 1981, ch. 110½, par. 4—3.

In *Wagner v. Clauson* (1948), 399 Ill. 403, 78 N.E.2d 203, the testatrix provided in her will for distribution "in accordance with a memorandum of instructions prepared by me and delivered to her [trustee]." (399 Ill. 403, 405-06.) The supreme court found an improper incorporation by reference since the separate document was not in existence when the will was executed, and it was not clear that the document introduced at trial was the same one referred to in the will. The court concluded that the clause at issue attempted to create a trust which failed because it lacked specificity and ordered distribution to the heirs of the testatrix. In discussing the rules for a valid incorporation by reference, the court noted:

"The law requires a will to be in writing and attested as pro-

vided by statute. As shown above, under certain conditions a separate writing may become a part of the will, if properly identified, and this constitutes no evasion of the statute on wills, requiring an attested writing, since it is considered a part of the will, to which the attested signatures are attached. ***

* * *

*** [A] bequest or devise in trust, which is subject to the testator's future directions, or directions which may be at any time changed after the execution of the will, are void unless the directions are in writing and attested in conformity with the statute on wills." 399 Ill. 403, 411-13, 78 N.E.2d 203, 207-08.

■■ Decedent's attempt to create an oral plan of testamentary devise by requesting the executor to follow "verbal guidelines" must fail for these reasons. On this view of things, we entertain serious doubt that the remainder of paragraph 4 could be carried out as a result of declaring void such provision, without doing violence to the testator's intention that these guidelines be followed. (*Cf. In re Estate of Gerbing* (1975), 61 Ill. 2d 503, 337 N.E.2d 29.) Nevertheless, we will consider the executor's related argument that it was testator's intention to create a general power of appointment.

■■ In cases involving the construction of wills, the cardinal rule of construction, to which all others yield, is to determine and to effectuate the intent of the testator so far as such is not contrary to law or public policy. (*Cickyj v. Skeltinska* (1981), 93 Ill. App. 3d 556, 417 N.E.2d 699.) We agree with the executor that a partial intestacy should be guarded against (see *Wise v. First National Bank* (1957), 10 Ill. 2d 623, 141 N.E.2d 1; *Schuyler v. Zwiep* (1976), 42 Ill. App. 3d 91, 355 N.E.2d 554), but point out that such a principle is a guide in the construction of a will and not an absolute principle. A review of the decisions involving powers and trusts leads to the conclusion that this court has no choice but to declare that the testator attempted to create a trust which failed for a lack of specificity.

A power of appointment is defined as an authority (as distinguished from a duty) conferred upon another (donee) by deed or will to appoint or nominate a person or persons (appointee) to receive and enjoy an estate or an income therefrom or from a fund. (Black's Law Dictionary 1054 (5th ed. 1979); L. Simes & A. Smith, The Law of Future Interests sec. 871, at 345 (2d ed. 1956); *In re Estate of Schaaf* (1974), 19 Ill. App. 3d 662, 312 N.E.2d 348.) When a power gives the donee the right to choose anyone to enjoy the property, including the donee, a general power of appointment is created; if the appointees

are restricted in some manner, a special power is created. (*Schaaf.*) Contrawise, a trust involves not merely a discretionary authority, but a legal relationship whereby the trustee is under a fiduciary obligation to deal with property in accordance with the instructions of the trustor for the benefit of a third party, *cestui que.* This distinction between the two is important, for while a power is subject to a discretionary exercise, a trust creates enforceable rights against the trustee. (*Schaaf;* Restatement (Second) of Trusts sec. 25 (1959).) The issue at bar can be reduced to the simple question: Did the testator intend to direct the property disposition, or did he confer upon the executor a power to appoint the property at his discretion.

■ The executor argues that the testator did not impose any duties on him since the language of the will was merely precatory rather than mandatory. He points to the fact that testator used the words "verbal guidelines" rather than "directions" or "instructions" in paragraph 4 of the will. He argues further that indicative of the testator's desire to vest the executor with discretion is the last phrase of paragraph 4 leaving to the executor the authority to distribute "in accordance with his best judgment." In support of the executor's contention that the words are precatory, he relies on *Cickyj.*

In that case, the court held that language in a will providing " '[i]t is my wish and desire that my said cousin *** mails parcels containing food, clothing, jewellery etc. to *** [testator's relatives] ***' " was merely precatory and did not impose a duty on the executor to mail such persons the parcels of food and clothing. (*Cickyj v. Skeltinska* (1981), 93 Ill. App. 3d 556, 560.) Compared to paragraph 4 of Reiman's will, it is apparent that Reiman used more than the precatory language. His will contained mandatory language throughout.

Other cases cited by the executor to show that no trust was created and that only precatory language was intended are *Newhall v. McGill* (1949), 69 Ariz. 259, 212 P.2d 764, and *Burton v. Irwin* (1971), 212 Va. 104, 181 S.E.2d 624. In *Newhall,* the court considered language which provided: "Second—I give, devise and bequeath to my sister, Sarah Campbell McGill all my real and personal property to be cared for and disposed of according to my personal directions to her." (69 Ariz. 259, 261, 212 P.2d 764, 765.) The court there found that the language constituted an outright disposition not in trust and reached this result on the theory that where later words in a sentence of the will cut down an absolute gift previously provided for, they will be disregarded. A further influence on the court was its belief that the testatrix intended to give her sister a beneficial interest. *Burton* also involved a provision of a will which was either an outright devise, or

one in trust. That will provided distribution to the testator's brother of certain property, and further that "my Brother knows my wishes and will carry them out, to the best of his ability." There, as in *Newhall,* the court rejected the trust result, finding the language to have been mere suggestion. Several differences are immediately apparent between this will and those in *Burton* and *Newhall.* In both cases the language was directed to relatives of the testator and not the executor, and in *Burton* the testator did not intend to impose legally enforcible obligations by the use of the word "wishes." The *Newhall* court, if faced with Reiman's will, would undoubtedly have found a trust since that court noted that precatory language directed to an executor would ordinarily be construed to create a trust. The court noted:

"Courts have held that precatory words directed to an executor indicate the objects of a trust in the mind of the testator, while the same words addressed to a devisee do not indicate a trust. [Citations.] In the instant case while the sole legatee and devisee is also the named executrix, yet the reference to 'directions' in the will are to her as 'my sister' and not as 'executrix.' " 69 Ariz. 256, 264, 212 P.2d 764, 767-68.

In *Wagner,* our supreme court addressed a similar clause. There the will provided that " '\*\*\* [a]ll the rest, residue and remainder of my property, real, personal, and mixed and wherever situated, I give, devise and bequeath to Katherine Clauson, as Trustee, \*\*\* [to distribute in accordance with a memorandum of instructions]. \*\*\*' " (*Wagner v. Clauson* (1948), 399 Ill. 403, 405-06, 78 N.E.2d 203, 205.) The court held that this language was inconsistent with an outright bequest and instead was an incomplete trust. See also *Thomas v. Anderson* (8th Cir. 1917), 245 F. 642; Restatement (Second) of Trusts sec. 125, comment *d* (1959); Restatement of Property sec. 323, comment *e* (1940).

The authorities cited by the heirs in support of their argument that the trial court correctly held paragraph 4 to have created an incomplete trust construed will provisions very similar to the language found here, and fully support the judgment below. See *Olliffe v. Wells* (1881), 130 Mass. 221; *Thomas; Tunis v. Dole* (1952), 97 N.H. 420, 89 A.2d 760.

At bar, the last will and testament of Reiman similarly attempts to impose mandatory duties on the executor to distribute property in accordance with the provisions of the will and certain verbal guidelines in addition to the executor's best judgment. The will contains little, if any, indication that testator intended to confer a benefit on ex-

ecutor. The paragraph of the Reiman will, in fact, contains no language of devise or bequest to the executor to indicate that the latter is to receive any beneficial interest in the property in clear distinction from the testamentary language found in the cases cited. Neither the object, subject, or purpose of the attempted trust are set out, and accordingly a resulting trust arises in favor of the testator's heirs at law. As the executor notes, this result may well have defeated the intention of Reiman to limit the bequest to his mother and sister to $10,000 each. As unfortunate as that result may be, it only underscores the necessity that a testator employ a knowledgeable scrivener to carry out his wishes.

■ The executor also filed a motion for hearing requesting the court to consider evidence of the circumstances surrounding the testator at the time the will was executed. He argues in this court that the will is ambiguous and that extrinsic evidence should have been considered by the trial court. The rules governing the admission of extrinsic evidence to aid in the construction of a will are well settled in this State, the crucial determination in each case being whether as a matter of law the will is ambiguous, necessitating extrinsic evidence. (See *Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 186 N.E.2d 293; *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 161 N.E.2d 254.) At bar, the trial court correctly denied the executor's motion. The authorities cited by him do not detract from the conclusion that the decedent intended to create a trust by paragraph 4 of his last will and testament. We see no purpose in hearing extrinsic evidence to explain ambiguous provisions of an otherwise invalid disposition.

■ Finally, the heirs argue the executor of decedent's estate has no right to appeal the suit on behalf of the estate to seek a construction which would benefit him individually. We disagree. *In re Estate of Gerbing* (1975), 61 Ill. 2d 503, 337 N.E.2d 29, amply disposes of respondents' argument. In that case the decedent's son, the executor of the estate, was named as beneficiary of a testamentary trust set up by his mother under her last will and testament. Under the trust instrument, the son would receive distribution of the principal only upon his wife's death, or his divorce from her. The trial court refused to hold the provision void as contrary to public policy, and the executor appealed in his individual capacity. On appeal to the supreme court, the argument was made that the executor should be estopped to appeal the decision in his individual capacity since he was also the executor of the estate. This contention was rejected by the court in language applicable here:

"In a suit contesting a will it is the statutory duty of an exec-

utor to defend the will. (Ill. Rev. Stat. 1973, ch. 3, par. 93.) In a suit to construe a will the executor is not in the position of defending the will. He is maintaining an action to construe a will and have the duties that are imposed by the will defined by the court. The fact that he is personally interested as a devisee or legatee or otherwise does not preclude an executor from suing for a construction of the will although the final construction may adjudicate his rights as a beneficiary under the will. [Citation.] In fact, in this case, Frank Gerbing, Jr., is a proper party to the construction suit both as the executor of the estate and individually. [Citation.] As a party to the proceeding in his individual capacity he had the right to perfect an appeal from the order of the circuit court. [Citation.] Also, as an executor, he was interested in having a correct decision in the case and had a right to appeal for the purpose of securing a proper construction of the will. [Citation.]" 61 Ill. 2d 503, 506, 337 N.E.2d 29, 32.

Here, Ilmar Palm-Leis, who possibly would benefit if the will was construed to create a general power of appointment, was also charged as executor with effectuating testator's oral guidelines and written provisions. He was interested in a proper construction of the will, and he was aggrieved by the determination below. His duties as executor are at stake and the contention that he lacked standing is without merit. Whether he will be able to charge the estate with the expenses of the appeal is a separate issue not yet determined or presented for our decision.

For the foregoing reasons, the order of the trial court granting respondents' motion for summary judgment is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.