In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1657

MARY BUCKSBAUM SCANLAN,

*Plaintiff-Appellant,*

*v.*

MARSHALL EISENBERG, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-05026—**John F. Grady,** *Judge.*

ARGUED SEPTEMBER 28, 2011—DECIDED JANUARY 20, 2012

Before BAUER, WOOD and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Mary Bucksbaum Scanlan ("Scanlan") is a current beneficiary of several discretionary trusts. Scanlan brought claims of legal malpractice and breach of fiduciary duty against the trustee and her lawyers. The district court dismissed all of her claims with prejudice and ruled that Scanlan lacked Article III standing because she did not allege facts showing a likelihood that the trusts' corpus were

insufficient to pay her discretionary distributions. We reverse and remand.

## I.  BACKGROUND

### A.  The Trusts and the Parties

Scanlan was born in 1969 and is the daughter of Martin Bucksbaum. Bucksbaum and his brother developed shopping centers eventually founding General Growth Properties, Inc. ("GGP"), one of the largest traded real estate investment trusts in the United States, with $34 billion in total market capitalization and $3 billion in annual revenues. GGP currently trades around $14 per share[1] on the New York Stock Exchange under the ticker, GGP.

Beginning when Scanlan was a child, her father and uncle established six trusts (the "Trusts"), naming Scanlan as the primary beneficiary. Each of the Trusts authorizes the corporate trustee, General Trust Company (the "Trustee"), to distribute "all or as much of the net income or principal, or both" of the trust to Scanlan "as the Trustee deems to be necessary for her support" or "in her best interests." No other person is eligible to receive any distributions from the Trusts during Scanlan's lifetime, and Scanlan's children are contingent remaindermen.

The law firm of Neal, Gerber & Eisenberg, LLP (the "Law Firm"), through two of its partners, Marshall Eisenberg

---

[1]  As of December 20, 2011, GGP closed at $14.52.

("Eisenberg") and Earl Melamed ("Melamed") generally represented Scanlan throughout her adult life when she needed legal advice. At the same time, they represented both the Trustee and GGP. In addition to his legal representation of GGP, Eisenberg also served as the Secretary of GGP from April 1993 through October 2008; Eisenberg and Melamed both own GGP stock.

Eisenberg and Melamed personally control General Trust Company. For example, Eisenberg is its majority owner, its president, a member of its board of directors, and one of the three members of its Trust Committee. Melamed serves on General Trust Company's board of directors, serves as its Secretary, and is the second member of its Trust Committee.

### B. The Stock Purchases

In 2007 and 2008, the Trusts purchased hundreds of millions of dollars of additional GGP stock. These purchases were financed with the proceeds of a loan secured by a pledge of the Trusts' assets. At the time of the purchases, the Trusts were already heavily invested in GGP stock, which constituted over 65% of the Trusts' assets. Eisenberg and Melamed approved the GGP stock purchases in their capacity as officers and directors of the Trustee, and the Law Firm, together with Eisenberg and Melamed, provided legal advice concerning the transaction.

On April 16, 2009, GGP declared bankruptcy. Scanlan's Trusts suffered more than $200 million in losses due to a drop in GGP stock purchased in 2007 and 2008.

### C.  The Lawsuit

Scanlan brought an action on August 17, 2009, naming the Trustee, the Law firm, Eisenberg, and Melamed as defendants (collectively, the "Defendants" or "Appellees"). On June 30, 2010, Scanlan filed an amended complaint, which added her children as plaintiffs based on their status as contingent beneficiaries of the Trusts. Because her children are minors, Scanlan is suing on their behalf.

In her amended complaint, Scanlan complains that the Trustee's purchases of GGP stock were not made in her best interests, but instead to further (1) her lawyers' own financial interest in retaining GGP as a client; (2) the interests of other members of the Bucksbaum family who managed GGP (whom her lawyers also represented); (3) Eisenberg and Melamed's personal interests as shareholders; and (4) Eisenberg's interest as Secretary of GGP.

Specifically, Scanlan brings claims against the Trustee for breaching its fiduciary duties of loyalty, prudence, and disclosure when it purchased the GGP stock in 2007 and 2008. Scanlan also brings claims against her lawyers for breach of fiduciary duty, legal malpractice, and aiding and abetting the Trustee's breach of its fiduciary duty. Lastly, Scanlan seeks equitable relief, including (1) restoration of the Trusts' corpus; (2) the removal of the Trustee; (3) an accounting and books and records request; (4) modification of the Trusts to provide her with power to remove the Trustee; (5) the disgorgement of attorneys' fees; and (6) punitive damages.

### D. Procedural Context

On October 28, 2009, the Defendants filed a Rule 12(b)(1) motion arguing that Scanlan was improperly seeking a direct payment of damages. In her response, Scanlan claimed that she was seeking an order compelling the Defendants to restore the Trusts' corpus. During the argument on the motion, the district court raised, *sua sponte*, the issue of whether Scanlan might lack Article III standing because she was a discretionary beneficiary. The Trustee's attorney all but made Scanlan's argument for her, first, conceding that Scanlan had standing to seek restoration of the corpus, but then agreeing to take that issue under advisement and re-brief the issue if the district court preferred.

On October 14, 2010, the district court ruled that Scanlan lacked Article III standing and dismissed all of her claims with prejudice. Specifically, the district court held that Scanlan lacked standing unless she could allege "facts showing a likelihood that the corpus of the trusts would ever be insufficient to pay all of her discretionary distributions to which [she] might become entitled during her lifetime." This appeal followed.

The issue on appeal, then, is a narrow one: whether Scanlan has constitutional standing to assert her claims in federal court. We find that she does and reverse the district court.

## II. DISCUSSION

We review a district court's decision to grant a Rule 12(b)(1) motion to dismiss for lack of standing

*de novo*, accepting as true all facts alleged in the well-pleaded complaint and drawing all reasonable inferences in favor of the plaintiff. *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1057 (7th Cir. 1994).

The burden to establish standing is on the party invoking federal jurisdiction—here, Scanlan—and the elements she must show are:

> (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision.

*Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To satisfy the injury-in-fact requirement, Scanlan "must establish that [she] has sustained or is immediately in danger of sustaining some direct injury." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quoting *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001)). "Mere speculation is not enough to establish an injury in fact." *Id.*

The district court's standing inquiry, and more specifically, its injury-in-fact analysis, focused primarily on the current value of the Trusts' assets. Having found that

Scanlan did not allege any facts indicating that the value of the Trusts' corpus—approximately $800 million—would ever be insufficient to fund any potential "support" and "best interests" payments, the district court concluded that Scanlan did not suffer an injury in fact for purposes of Article III. To put it differently, Scanlan's legally protected interest arising out of her status as a discretionary beneficiary, according to the district court, is *limited* to her interest in potential discretionary payments made pursuant to the Trusts' instruments. And without an injury to that specific interest, the court concluded, Scanlan has no injury in fact. We disagree with that characterization of Scanlan's interest.

That Scanlan must suffer an invasion of a legally protected interest is a principle of federal law. But the nature and extent of Scanlan's interest as a beneficiary of a discretionary trust, and therefore, whether that interest can form the basis of a federal suit, depend on the law that defines the rights of a discretionary beneficiary. *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001). In this case, that is the law of Illinois. So we look to see whether according to Illinois law a discretionary trust beneficiary has the kind of stake that Article III requires.

So stated, this is an issue that has meager precedent. The Restatements (Third) of Trusts, Section 94, addresses who may bring a suit against a trustee for breach of trust, and therefore, provides some guidance on this topic. *See*

*In re Estate of Lieberman*, 909 N.E.2d 915, 922 (Ill. App. Ct. 2009). Section 94, which is entitled, "Standing to Enforce a Trust," provides:

> A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries.

The Restatements (Third) of Trusts, § 94(1).

Comment b to § 94 then explains who qualifies as a "beneficiary" with standing to bring suit to redress a breach of trust:

> A suit to enforce a private trust ordinarily . . . may be maintained by any beneficiary whose rights are or may be adversely affected by the matter(s) at issue. The beneficiaries of a trust include any person who holds a beneficial, present or future, vested or contingent . . . . This includes a person who is eligible to receive a discretionary distribution . . . .

*Id*. § 94, cmt. b.

Clearly then, Comment b provides that a beneficiary of a discretionary trust whose rights are "adversely affected" has standing to enforce the trust. But Comment b poses, rather than answers, the question: What does it mean for a discretionary beneficiary's rights to be "adversely affected"? Again, the Appellees argue that Scanlan's rights as a discretionary beneficiary are not "adversely affected" until the Trustee fails to make a distribution in which she is entitled to under the terms

of the Trusts. Only after that showing will Scanlan have standing, the Appellees claim. Such a rigid standard is not supported by trust law authority, which indicates that a discretionary beneficiary's rights include something more than just an interest in potential distributions.

In Illinois, a beneficiary has an equitable interest in the trust property. *Parkway Bank & Trust Co. v. Northern Trust Co.*, 572 N.E.2d 1055, 1058 (Ill. App. Ct. 1991); *Farkas v. Williams*, 125 N.E.2d 600, 605 (Ill. 1955) ("The declaration of trust immediately creates an equitable interest in the beneficiaries . . . ."); *Gordon v. Gordon*, 129 N.E.2d 706, 708 (Ill. 1955); *Norris v. Estate of Norris*, 493 N.E.2d 121, 126 (Ill. App. Ct. 1986). Jurisdictions examining the nature of a discretionary beneficiary's interest have found that, like an ordinary beneficiary, a discretionary beneficiary has an equitable interest in the trust property. *See, e.g.*, *Pritzker v. Pritzker*, Case Nos. 02 CH 21426, 03 CH 7531, at 15-16 (Cir. Ct. of Cook Cty., Ch. Div. March 5, 2004) ("It is clear that beneficiaries of a discretional trust have a present, existing property interest in the trust res."); *In re Marriage of Jones,* 812 P.2d 1152, 1157 (Colo. 1991) (citing 2 *A. Scott on Trusts* § 130, at 409 (4th ed. 1987)) (noting that a discretionary trust beneficiary has an equitable interest, but the beneficiary cannot force the trustee to pay income or principal unless the beneficiary could establish the trustee had engaged in fraud or an abuse of discretion); *Pack v. Osborne*, 2008 WL 4907545, at *3 (Ohio App. Ct. Nov. 14, 2008) (determining the nature of the discretionary beneficiary's interest in the trust and concluding it was an equitable interest); *Paulson v. Paulson*, 2010 ND 100, 783 N.W.2d 262, 272 (stating that a discretionary beneficiary has an equitable

interest in the trust assets); *United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn. 1994) (citing Restatement (Second) of Trusts 199 (1959)) (commenting that a discretionary beneficiary has equitable remedies against a trustee for breach of trust).

Cases that establish a beneficiary's equitable interest in trust property, the Appellees argue, do not arise in contexts involving standing and instead merely recite general trust law principles. Yet we see no reason why canonical principles of trust law should not be employed when determining the nature and extent of a discretionary beneficiary's interest for purposes of an Article III standing analysis. Applying those principles, we conclude that Scanlan has an equitable interest in the corpus of the Trusts. And it is from that equitable interest that Scanlan acquires standing to enforce the Trusts.

Stemming from Scanlan's status as a beneficiary is a fiduciary relationship between her and the Trustee that gives rise to equitable remedies against the Trustee for breach of trust. A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degree of fidelity and utmost good faith. *In re Estate of Muppavarapu*, 836 N.E.2d 74, 77 (Ill. App. Ct. 2005); *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 829 N.E.2d 818, 828 (Ill. App. Ct. 2005); *Giagnorio v. Emmett C. Torkelson Trust*, 686 N.E.2d 42, 46 (Ill. App. Ct. 1997); *see also* Restatement (Second) of Trusts § 2, cmt. b (1959); Restatement (Second) of Trusts § 170 (1959). The fiduciary obligation

of loyalty flows from the relationship of the trustee and beneficiary, and the essence of that relationship is that the trustee is charged with equitable duties toward the beneficiary. *Home Federal Savings and Loan Ass'n of Chicago v. Zarkin*, 432 N.E.2d 831, 845-46 (Ill. 1982); Restatement (Second) of Trusts § 164, cmt. h (1959); *Matter of Reiman's Estate*, 450 N.E.2d 928 (1983) ("[A] trust involves not merely a discretionary authority, but a legal relationship whereby the trustee is under a fiduciary obligation to deal with property in accordance with the instructions of the trustor for the benefit of a third party . . . ."). So by virtue of the fiduciary relationship between Scanlan and the Trustee, Scanlan acquires the right to bring an action for breach of fiduciary duty. *See Parish v. Parish*, 193 N.E.2d 761, 766 (Ill. 1963); *Burrows v. Palmer*, 125 N.E.2d 484, 486-87 (Ill. 1955); Restatement (Second) of Trusts § 199 (1959).

Our conclusion in this regard is further supported by trust law that recognizes a beneficiary's standing is not based on an absolute entitlement or a probability of receiving trust assets. The mere fact that a beneficiary may ultimately never receive trust assets does not prevent that beneficiary from bringing a claim. For example, a contingent beneficiary can bring an action against the trustee—even though his interest is remote and contingent—to protect his possible eventual interest, i.e., to protect and preserve the trust res. *Barnhart v. Barnhart*, 114 N.E.2d 378, 388 (Ill. 1953). In Illinois, therefore, "a trustee owes the same fiduciary duty to a contingent beneficiary as to one with a vested interest insofar as necessary for the protection of the contingent

beneficiary's rights in the trust property." *Burrows*, 125 N.E.2d at 486-87; *see also Shaw v. Weisz*, 91 N.E.2d 81, 87 (Ill. App. Ct. 1950).

If a beneficiary who may never receive the trust's assets stands in a fiduciary relationship with the trustee, then so should a beneficiary of a discretionary trust. We see no reason why a beneficiary, simply by virtue of being the beneficiary of discretionary trust, should be denied the ordinary equitable rights that flow from the fiduciary duty that runs from a trustee to a beneficiary. Included in those rights is the right to bring an action for breach of trust.

*Goodpasteur v. Fried* offers further support. 539 N.E.2d 207, 208 (Ill. App. Ct. 1989). In *Goodpasteur*, one of the beneficiaries of a discretionary trust sought an order requiring the trustee to provide an inventory of trust assets and an accounting of the trust's receipts and disbursements. *Id*. The appellate court rejected the trustees' argument that the discretionary beneficiary should not be able to bring his suit because his interest in the trust was an "expectancy" and the real party concerned was the remainderman. *Id*. at 210.

In reversing the circuit court, the appellate court reasoned:

> Plaintiff is a named beneficiary of the trust. . . . It is conceivable that, at the death of the beneficiaries in plaintiff's class, no income or principal will be left to distribute to the [remainderman]. It is incongruous to argue that plaintiff should not be allowed to maintain this action because the [remainderman], which

will enjoy the benefits of the trust only if funds are left at the death of plaintiff and beneficiaries in his class, is the party "really concerned." Such a statement implies that defendants have already decided not to make any payments to plaintiff and the beneficiaries in his class.

We are of the opinion that plaintiff is a beneficiary eligible to have the benefit of income under the trust. As such, plaintiff is entitled to an account showing the receipts, disbursements and inventory of the trust estate. . . .

*Id.* at 210-11.

Again, no authority requires a discretionary beneficiary to first allege that the trust corpus is insufficient to fund a distribution when bringing a claim for breach of trust. That sort of inquiry has a damages flavor to it, which is a merits, not a standing, question. *See Aurora Loan Servs. Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006) ("The point is not that to establish standing a plaintiff must establish that a right of his has been infringed; that would conflate the issue of standing with the merits of the suit. It is that he must have a colorable *claim* to such a right.").

The Appellees argue that Illinois trust law and Article III are not coextensive, and the mere fact that a discretionary beneficiary may have a right to sue under state law does not ensure standing. It is true that a standing inquiry does not necessarily end with the determination of a state right to sue. But the Supreme Court stated in *Sprint Commc'n Co., L.P. v. APCC Services, Inc.* that

"history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider" and that where parties have "long been permitted to bring" the type of suit at issue, it is "well nigh conclusive" that Article III standing exists. 554 U.S. 269, 274-75, 285 (2008). After carefully reviewing beneficiaries' rights, we determined that beneficiaries—including discretionary beneficiaries—have "long been permitted to bring" suits to redress a trustee's breach of trust.

Moreover, in *FMC Corp. v. Boesky*, we held that the actual or threatened injury required under Article III can be satisfied solely by virtue of an invasion of a recognized state-law right. 852 F.2d 981, 993 (7th Cir. 1988). In *Boesky*, FMC brought a claim for wrongful misappropriation and misuse of its confidential business information, which forced FMC to increase its cash distribution to its shareholders under a revised capitalization plan. *Id*. at 989-90. Finding that the distribution of FMC's assets to the owners of those assets was merely a movement of assets between owners, the district court found there was no injury for purposes of Article III. *Id*. We reversed the district court and held that the misappropriation of confidential information "constitutes a distinct and palpable injury that is legally cognizable under Article III's case and controversy requirement." *Id.* Basing our decision, in part, on *Warth v. Seldin*—which held that injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing—we concluded that "[t]he same must also be true of legal rights growing out of state law." *Boesky*, 852 F.2d at 993 (citing *Warth v. Seldin*,

422 U.S. 490, 498 (1975)). In fact, we pointed out that if this were not so, "federal courts sitting in diversity could not adjudicate some cases involving only state-law breach-of-fiduciary claims . . . because some actions for breach of fiduciary duty do not require the plaintiff to show an injury." *Id*.

Here, Scanlan is the beneficiary of several discretionary Trusts, and under those Trusts, she is currently eligible to receive all of the Trusts' corpus. We established that Scanlan, as a beneficiary, is owed a fiduciary duty and that she has an interest in ensuring that the Trustee discharge its duties with fidelity and a certain degree of care. The Trustee and her lawyers, Scanlan claims, breached those fiduciary duties, causing the Trusts' corpus to lose approximately $200 million. Under these circumstances, the Trustee's and Lawyers' dereliction of their fiduciary duties is a direct invasion of Scanlan's protected interest in the prudent and loyal administration of the Trusts. Scanlan has therefore suffered an injury sufficient to satisfy Article III's case and controversy requirement.

This holding is consistent with the objective of the standing doctrine. As the Supreme Court has explained, the purpose behind the standing doctrine is to ensure that plaintiffs have a "personal stake in the outcome" sufficient to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). The Court has also explained:

> [T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Allen*, 468 U.S. at 752.

Scanlan has a "required stake" in her suit; she has a legally protected interest in Trusts' corpus and in the proper administration of that corpus. Her claims against her lawyers and the Trustee are brought to protect that interest and redress her injury by seeking to remove the Trustee, restore the Trusts' corpus, and disgorge attorneys' fees. Scanlan's injury, therefore is not "too abstract." Nor is the relief she seeks too speculative.

The Appellees argue that under some circumstances a discretionary beneficiary's present interest in the trust property—before a trustee has made a distribution—is too attenuated to be considered the beneficiary's property. The Appellees, therefore, urge us to conclude that Scanlan only has an interest in her potential distributions, rather than the Trusts' corpus. It is true that in some circumstances, *e.g.*, for purposes of public aid eligibility and determining the bankruptcy estate, a discretionary beneficiary's interest in the trust assets is too remote to count as property. *See, e.g., Linser v. Office*

*of Attorney Gen.*, 2003 ND 195, 672 N.W.2d 643, 646; *In re Britton*, 300 B.R. 155, 159 (Bankr. D. Conn. 2003); *In re Eley*, 331 B.R. 353, 358 (Bankr. S.D. Ohio 2005). Likewise, in some cases, creditors are prevented from attaching the assets of a discretionary trust and have no remedy against the trustee until the trustee distributes the property. *See, e.g., United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn. 1994); *Harker v. Evatt*, 44 N.E.2d 355, 357 (1942); *Doksansky v. Norwest Bank Neb., N.A.*, 615 N.W.2d 104, 106-10 (Neb. 2000); *In re Duncan's Will*, 362 N.Y.S.2d 788, 790 (Sur. 1974).

These rules, however, are the result of underlying principles and policy considerations involving restraints on involuntary alienation. Those concerns, which are not present here, are distinct from the equitable principles of trust law at work in this case; namely, a beneficiary's right to hold trustees accountable and ensure that they properly discharge their fiduciary duties when administering trust property. That in some contexts Scanlan's interest in the Trusts' assets may not rise to the level of a "property interest" does not negate the fact that she and the Trustee stand in a fiduciary relationship. The same can be said of her relationship with her attorneys.

We remain unpersuaded that our holding will lead to *any* beneficiary having standing whether or not its specific interest is affected. Only a beneficiary of a discretionary trust whose rights are "adversely affected" has standing to enforce a trust. In claims for breach of trust, the requirement that a beneficiary of a discretionary

trust must plead facts indicating that the diminution in the trust assets had, or will ever have, a probable adverse impact on discretionary distributions is too demanding. Essentially that rule, which the Appellees ask us to adopt, would insulate trustees from suits for breach of trust. For instance, under that reasoning, a trustee could mismanage a trust with impunity, substantially reducing the assets over time, so long as there were enough assets left in the corpus to fund a future distribution. In fact, the larger the trust's corpus, the more likely that could happen. Take the Trusts in this case for example: with nearly $1 billion in assets, it is hard to imagine that there would ever be a situation in which the corpus would be insufficient to fund Scanlan's "best interests" and "support" distributions. Surprisingly, the Appellees admit this. The Trustee, could, under the Appellees' reasoning, reduce the assets by 90%—to a paltry $100 million—and still be sheltered from a breach of trust claim.

The Appellees' rule ignores the fiduciary relationship between a beneficiary and a trustee and is practically unworkable because the question inevitably becomes: at what point is the trust's corpus diminished to such an extent that the trustee can no longer make a future distribution? The Appellees cannot answer this question. Nor can we. Scanlan's standing should not turn on whether her "best interests" and "support" needs, whatever they may be, will be met. The district court, therefore, erred to the extent it concluded that Scanlan lacked Article III standing because she did not suffer an injury in fact.

## III. CONCLUSION

For the reasons stated herein, we REVERSE and REMAND for further proceedings consistent with this opinion.