In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1813

G&S HOLDINGS LLC, et al.,

*Plaintiffs-Appellants*,

*v.*

CONTINENTAL CASUALTY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-cv-00592 JD-CAN—**Jon E. DeGuilio**, *Judge.*

ARGUED DECEMBER 2, 2011—DECIDED SEPTEMBER 20, 2012

Before RIPPLE and ROVNER, *Circuit Judges*, and
FEINERMAN, *District Judge.*[*]

ROVNER, *Circuit Judge.* On November 29, 2007, an
explosion occurred at a metal processing plant in Man-
chester, Georgia owned by G & S Metal Consultants, Inc.

---

[*] The Honorable Gary S. Feinerman of the Northern District
of Illinois, is sitting by designation.

("GSMC"). GSMC had obtained insurance through Continental Casualty Co. ("Continental") which covered damage to the plant caused by the explosion. Pursuant to that policy, Continental made some payments to GSMC, but GSMC subsequently filed suit against Continental alleging that the payments were inadequate. That case by GSMC, however, is not the one before the court today. GSMC is now in bankruptcy, and is not a party to the case before this court. Instead, this case was filed by others who claim that the failure of Continental to pay adequate damages to GSMC in a timely manner caused them damages. The plaintiffs brought suit against Continental and against Hylant Group, Inc., their former insurance broker.

Three of the plaintiffs, G&S Metal Trading, LLC., G&S Holdings, LLC, and Aluminum Sizing, Inc., are businesses affiliated with GSMC, and are additional named insureds under the policy that covered the Manchester plant. The other plaintiffs, R. Scott Galley, II, and Cynthia Galley, are owners and operators of GSMC, and allege that they are third-party beneficiaries of the policy. The district court granted Continental's motion to dismiss the complaint as to all parties, and plaintiffs now appeal.

The plaintiffs' complaint included seven counts, all arising from the alleged failure of Continental to pay damages to GSMC in a timely and adequate manner. Those counts include claims of: breach of contract against Continental (Count I); promissory estoppel against Continental and Hylant (Count II); bad faith claims handling against Continental (Count III); negligent

claims handling against Continental (Count IV); tortious interference with contract against Continental (Count V); negligent infliction of emotional distress against Continental (Count VI); and breach of fiduciary duties against Continental and Hylant (Count VII). The claims against Hylant were dismissed during this appeal and are not before the court, leaving only the challenges to the district court's dismissal of the claims against Continental.

The crux of the complaint was that as a result of the failure to receive timely and adequate payments, GSMC experienced financial difficulties and the plaintiffs were adversely affected by the ensuing loss of business with GSMC. That core claim was the thread running through each of the independent counts in the complaint.

The district court applied Indiana law in deciding the motion to dismiss, and the parties do not challenge that determination. The court held that the plaintiffs lacked standing to pursue a number of claims, and dismissed the remaining claims for failure to state a claim.

On appeal, plaintiffs raise a number of challenges. With respect to the claims as a whole, the plaintiffs assert that the district court erred in applying the heightened pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in deciding the motion to dismiss. In addition, the plaintiffs assert that the court erred in granting dismissal with respect to each of the seven counts. We will examine these claims in turn.

First, the plaintiffs assert that the court erred in applying the federal pleading standard as set forth in

*Twombly* and *Iqbal* because their complaint was filed in state court and subsequently removed to federal court. In *Twombly* and *Iqbal*, the Supreme Court held that in order to survive a motion to dismiss, a complaint must be plausible on its face, meaning that the plaintiff must have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations to meet that standard, but must go beyond mere labels and conclusions, and must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although the plaintiffs argue that the federal pleading standard is more stringent, they never actually identify in their briefs exactly what that standard is and in fact merely reference *Twombly* and *Iqbal* without setting forth the holding as we did above; nor do they explain how it deviates from the Indiana standard. Instead, the plaintiffs focus solely on identifying the Indiana pleading standard, summarily concluding that it is more liberal than the federal one and that it requires only a short and plain statement of the claim and does not require that the plaintiffs allege facts which constitute a cause of action.

We need not explore which standard applies, nor whether they are materially different, because the plaintiffs failed to raise this argument in the district court. In fact, the plaintiffs identified the *Twombly* and *Iqbal* cases as the relevant law in their response to the

motion to dismiss in the district court. In their memorandum in response to the motion to dismiss, the plaintiffs declared that:

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face . . . . A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing." *Double v. Flair Interiors, Inc.*, 2010 U.S. Dist. LEXIS 6312 (N.D. Ind. Jan. 25, 2010).)

Memorandum In Support of Plaintiffs' Response to Continental Casualty Company's Motion to Dismiss Pursuant to Federal Rule Of Civil Procedure 12(b)(6) at 1. The memorandum cites to *Double*, but that case in the passage quoted is itself quoting *Twombly* and *Iqbal*. *Double v. Flair Interiors, Inc.*, 2010 WL 405550, 1 (N.D. Ind. 2010). The only other case cited in this section by the plaintiffs, *Panasuk v. Steel Dynamics, Inc.*, 2009 WL 5176193, 4-5 (N.D. Ind. 2009), also quotes *Twombly* and sets forth the federal pleading standard that the plaintiffs now disavow.

We have repeatedly held that a party waives an argument by failing to make it before the district court. *Hayes v. City of Chicago*, 670 F.3d 810, 815 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate. *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15. The obligation to raise the relevant arguments rests squarely with the parties, because, as we

have repeatedly explained: "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Alioto*, 651 F.3d at 721; *Lekas*, 405 F.3d at 614-15. The plaintiffs in the present case went beyond failing to raise a relevant argument—they affirmatively relied on the federal pleading standard that they now argue is erroneous. That is a waiver in the truest sense. *See Alioto*, 651 F.3d at 719 n.1. Accordingly, the plaintiffs cannot succeed on their claim that the wrong standard was applied to the motion to dismiss.

The plaintiffs also assert that with respect to each individual count the court erred in granting the motion to dismiss. Before turning to each of those counts, it is important to understand the nature of the complaint as a whole. It does not allege that Continental failed to make payments owed to the plaintiffs under the policy, even though some of the plaintiffs are additional named insureds under the policy. In fact, none of the counts relate to the failure of Continental to fulfill its direct obligation to the plaintiffs under the policy. There is no allegation that any plaintiff submitted a claim for coverage under the policy arising from the explosion at the plant, nor is there any indication that Continental failed to make payments due to the plaintiffs under the policy. In its memorandum in response to the motion to dismiss, the plaintiffs explicitly acknowledged that

they were not claiming damages related to the explosion or coverage owed to them:

> [Continental] is correct in stating that Plaintiffs did not allege that any property damage or business loss claim was made by any of the additional named insureds from the explosion. In this case, the damage sustained by the Plaintiffs did not occur due to the explosion at the Georgia plant. Instead, the damages occurred as a result of [Continental] failing to timely and fully pay the claim owed to G&S Metal Consultants, Inc. If the claim owed to G&S Metal Consultants, Inc. had been paid, the additional insureds would not have suffered injury.

Memorandum In Support of Plaintiffs' Response to Continental Casualty Company's Motion to Dismiss Pursuant to Federal Rule Of Civil Procedure 12(b)(6) at 5. The claims in the complaint, therefore, are not premised on any obligation owed directly to the plaintiffs by Continental, but rather are premised on Continental's failure to meet its obligations under the policy to pay GSMC for damages arising from the explosion. The plaintiffs' damages arise only indirectly from that failure, in that the failure to make timely payment contributed to the failure of GSMC's business, and that failure of GSMC's business resulted in financial and business losses for the plaintiffs. GSMC has in fact asserted its own rights in a separate lawsuit. The plaintiffs, however, seek damages based on the failure to fulfill duties owed to GSMC rather than themselves, and for injuries that arise from GSMC's subsequent business failure.

The district court accordingly held that the plaintiffs were not the real parties in interest and lacked standing to pursue their claims for breach of contract (Count I), promissory estoppel (Count II), bad faith claims handling (Count III), negligent claims handling (Count IV), and breach of fiduciary duties (Count VII), and dismissed those claims pursuant to Federal Rule of Civil Procedure 12(b)(1). The court held that the plaintiffs were not the real parties in interest because they did not seek recovery for an injury they suffered directly, but rather sought redress for derivative harm resulting from the injury to GSMC. Moreover, the court rejected the plaintiffs' contention that they had standing as third-party beneficiaries of the policy. The court held that the complaint lacked any basis to infer that the plaintiffs met the elements establishing status as third-party beneficiaries. Specifically, there was no basis to infer any clear intent that Continental's coverage of GSMC would confer a direct benefit on the plaintiffs, nor that the policy imposed any duty beyond payments to each insured on that insured's own claims. Accordingly, the court dismissed those counts pursuant to Rule 12(b)(1). We review the Rule 12(b)(1) dismissal under the *de novo* standard, accepting as true the facts alleged in the complaint and drawing reasonable inferences in favor of the plaintiff. *Scanlon v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012).

Plaintiffs first assert that the court erred in holding that they are not the real parties in interest. They argue that the question of whether they are real parties in interest should be determined under Indiana law, and

that under Indiana law when an insurance company lists parties as additional insureds, it is precluded from denying that they have an insurable interest. In addition, the plaintiffs note that under Indiana law "the plaintiff 'must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining , some direct injury as a result of the conduct at issue.'" *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993). The plaintiffs argue that they meet those criteria. Specifically, the plaintiffs assert that the complaint allows an inference that the operation of GSMC was an integral component for the successful operation of the plaintiff companies, such that the success of each was interdependent. From that contention, the plaintiffs assert that the losses to the plaintiff companies were not derivative of the loss sustained by GSMC, but rather were separate losses suffered by the plaintiff companies in their own right. As such, they argue that the damages sustained due to the defendant's underpayment would not be part of the bankruptcy estate of GSMC.

There are both constitutional and prudential limitations on the jurisdiction of the federal courts. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Under Article III of the Constitution, the jurisdiction of the courts is limited to claims presenting a case or controversy between the plaintiff and the defendant. *Id.* In order to establish a case or controversy, the party invoking federal jurisdiction must demonstrate "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v.*

*Wright*, 468 U.S. 737, 751 (1984); *FMC Corp. v. Boesky*, 852 F.2d 981, 987 (7th Cir. 1988); *Scanlan*, 669 F.3d at 841-42. The allegations in the complaint are sufficient to meet this minimal standard because the plaintiffs allege that they suffered economic harm as a result of Continental's failure to pay GSMC and that the injury could be redressed by the payment of damages. See generally *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008).

Even if constitutional standing is established, however, there are also prudential limitations of the court's exercise of jurisdiction. *FMC Corp.*, 852 F.2d at 987. A complaint may meet the standards for constitutional standing, yet fail to overcome the prudential standing hurdles. *FMC Corp*, 852 F.2d at 988. Although the court on its own may raise unpreserved questions of either constitutional or prudential standing, the court is not obligated to do so with respect to prudential standing questions. *Rawoof*, 521 F.3d at 757. We have held that matters of prudential standing can be waived if not preserved. *RK Co.*, 622 F.3d at 851, but see *Lewis v. Alexander*, 685 F.3d 325, 340 n.14 (3d Cir. 2012)(recognizing a split in the circuit as to whether objections to prudential standing can be waived, and listing circuit cases). Here, the standing objection was properly raised.

Among the prudential limitations on the exercise of federal jurisdiction, are: (1) when the harm alleged in the complaint is a generalized one shared in substantially equal part by a large class of citizens, that harm alone normally will not warrant the exercise of

federal jurisdiction; and (2) in general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties. *Warth*, 422 U.S. at 499; *RK Co.*, 622 F.3d at 851; *FMC Corp.*, 852 F.2d at 988. The latter requirement is similar to the requirement of Federal Rule of Civil Procedure 17 that every action must be prosecuted in the name of the real party in interest. *Rawoof*, 521 F.3d at 756-57 (stating that the requirements of standing should not be confused with Rule 17, but noting that some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of the prudential limitation on standing).

The appeal in this case centers on the prudential limitation that parties may only assert their own interests and not those of a third party. Although standing does not depend on the merits of the claims, it often hinges on the nature and source of the claim asserted. *Warth*, 422 U.S. at 500. For instance, if a plaintiff asserts a statutory claim, a court will consider whether the statute can properly be understood as granting a person in the plaintiff's position a right to judicial relief, thus implying a right of action in the plaintiff. *Id.* Moreover, a statute may create a right to relief in persons who would otherwise not possess such a right and thus impact the prudential standing determination. *Id.* at 501; *Scanlon*, 669 F.3d at 845.

The plaintiffs in this case argue that they are the real parties in interest because under Indiana law when an insurance company lists parties as additional insureds,

it is precluded from denying that they have an insurable interest. That unremarkable proposition is unhelpful to the plaintiffs who were named as additional insureds, and irrelevant to the plaintiffs who were not named insureds. The parties listed as additional insureds are not prevented from pursuing claims based on their interests as insureds. If they had sustained damages in the explosion, they would have standing to pursue a claim for those damages against Continental. The problem here is that the plaintiffs who are additional insureds are not pursuing claims based on their own interests, and in fact none of the plaintiffs submitted a claim to Continental under the policy. By their own admission, the plaintiffs' claims are based on the failure of Continental to fulfill the obligations owed under the policy to GSMC. They have pointed to no principle of Indiana law that gives additional insureds the right to assert claims based on duties owed to other named insureds.

The only other argument tendered by the plaintiffs in their challenge to the 12(b)(1) dismissal is that they have standing to pursue their claims because they have demonstrated a direct as opposed to a derivative injury. They argue that the complaint allows an inference that the operation of GSMC was an integral component for the successful operation of the plaintiff companies, such that the success of each was interdependent. Apparently, they believe that such interdependence renders the injury a direct one. Even accepting that the companies were interdependent, that does not lead to the conclusion that the losses by the plaintiffs are direct rather than derivative. The interdependence of the compa-

nies meant that if GSMC faced financial difficulties, the plaintiff companies would face similar difficulties. That does not, however, transform an injury to GSMC into a direct injury to the plaintiff companies. The losses to plaintiffs occurred because of the impact to GSMC of its own losses. In fact, if GSMC was in a strong enough financial position to easily sustain the loss occasioned by the underpayment, the plaintiffs would not have been impacted by Continental's actions. The injury to the plaintiffs stems from the injury to GSMC, and is derivative not direct, and plaintiffs are attempting to assert claims based on the legal rights and interests of GSMC.

In fact, the Indiana courts addressed similar claims in *Vectren Energy Marketing & Service, Inc. v. Executive Risk Specialty Ins. Co.*, 875 N.E.2d 774 (Ind. App. 2007). In *Vectren Energy*, the defendant Executive Risk Specialty Insurance Company (ERSIC) had issued a policy to ProLiance, an energy trading company, covering ProLiance and also covering plaintiffs Vectren and Citizens who were ProLiance's only members. *Id.* at 775. The policy provided that ERSIC would cover the insureds against loss claims for wrongful acts. *Id.* at 775-76. ProLiance was subsequently sued for wrongful acts, and ERSIC denied coverage under the policy exclusions. *Id.* at 776. Vectren and Citizens filed a complaint against ERSIC for breach of contract and declaratory relief based on the failure of ERSIC to provide coverage to ProLiance. *Id.*

The court recognized that Vectren and Citizen were covered by the policy, and that accordingly ERSIC owed

contractual duties to them that were separate and distinct from those duties owed to ProLiance. *Id.* at 777. The court concluded, however, that those plaintiffs could not pursue a breach of contract claim against ERSIC based on the contractual duties owed to ProLiance:

> In other words, while the appellants have standing to sue ERSIC for an alleged breach of the separate and distinct contractual duties owed to them as insureds, they do not have standing to sue ERSIC for its alleged breach of duties owed to ProLiance.

*Id.* at 777-78. The court then considered whether Vectren and Citizens had adequately alleged a breach of duties owed to them. The court noted that neither of them had suffered a loss as defined by the policy, because neither had received a claim that ERSIC was obligated to cover. *Id.* at 778. Although the failure to provide coverage to ProLiance would cause Vectren and Citizen to lose money as the only two members of ProLiance, the court held that the reality of that financial impact did not mean that they suffered a loss under the policy. *Id.* Any loss that Vectren and Citizen would suffer was merely derivative as a result of their relationship with ProLiance. *Id.* at 779. Vectren and Citizen alleged a breach of contractual duties to ProLiance, not to themselves. *Id.* Accordingly, the court dismissed the complaint because the plaintiffs lacked standing to bring the claims.

The claims brought by the plaintiffs in the present case are similar in nature, and command a similar result. As in *Vectren Energy*, the claims in this case do not allege

the failure to fulfill an obligation to the plaintiffs under the policy, but rather assert that the failure to fulfill the policy obligations to a third party, GSMC, have resulted in a loss to the plaintiffs. Even though the loss was a predictable result of the failure to fulfill the obligations of the policy, due to the interdependent relationship between the plaintiffs and GSMC, the claim against the insurer must be brought by the party to whom the duty is owed, which was GSMC. Just as Vectren and Citizen could not pursue a claim based on the breach of duties owed to ProLiance, the plaintiffs in this case cannot pursue a claim for Continental's breach of the duty owed to GSMC. *Vectren Energy* makes clear that Indiana does not provide any separate basis for standing which would alter the normal prudential limitations.

The plaintiffs do not raise any argument that individual counts should have been treated differently for standing purposes, nor is any apparent to us, and their general challenges have no merit. Accordingly, we affirm the court's dismissal of Counts I, II, III, IV, and VII under R. 12(b)(1) for lack of standing.

The plaintiffs briefly also challenge the district court's dismissal of the remaining counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

After the court's Rule 12(b)(1) dismissals of five of the counts, the only counts remaining in the case were Count V, tortious interference with a contract, and Count VI, negligent infliction of emotional distress. The district court dismissed those counts for failure to state a claim.

In arguing that the complaint adequately stated a claim, however, the plaintiffs also argue that count II, promissory estoppel, and count VII, breach of fiduciary duties, stated a claim and should not have been dismissed. As to those counts, the plaintiffs argue that the court only discussed the claims with respect to Hylant, and erred in not addressing the claims as against Continental. That argument fails to recognize the court's earlier Rule 12(b)(1) dismissal of both counts II and VII. The court considered counts II and VII as to Hylant because those were the only counts that were brought against Hylant in addition to Continental, and the claims against Hylant were not dismissed for lack of standing. For that reason, the court considered those claims under Rule 12(b)(6). There was no reason to consider whether the claims could survive the Rule 12(b)(6) standard as against Continental, because those claims had already been dismissed under Rule 12(b)(1). We have already rejected the plaintiffs' challenge to that Rule 12(b)(1) dismissal, and therefore there is no reason to consider their claim that Rule 12(b)(6) dismissal would have been improper. That applies equally to plaintiffs' claims that Counts I, III, and IV should not be dismissed for failure to state a claim. We need not address that contention because we have affirmed the court's dismissal of those counts under Rule 12(b)(1).

That leaves only Count V, tortious interference with contract, and Count VI, negligent infliction of emotional distress. The plaintiffs on appeal utterly fail to address the basis for the district court's granting of Rule 12(b)(6) dismissal as to these claims. As to tortious interference

with a contract, they merely recite the five elements and in conclusory sentences declare that the elements are satisfied. Those elements are:

> (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach.

*Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. App. 2010). They fail to recognize or contest the district court's conclusions as to why the allegations are insufficient as a matter of law. For instance, the district court noted that the complaint failed to contain any allegation that Continental had knowledge of the existence of a contract between the plaintiffs and GSMC, alleging only knowledge of a business affiliation. The plaintiffs in their brief merely note that Continental was aware of the affiliated nature of the plaintiffs' businesses with GSMC, and that by attaching a copy of the insurance policy, the plaintiffs allege that Continental was aware of that relationship. That essentially concedes the district court's point. The plaintiffs allege only that Continental knew that they had a business relationship, not that it had knowledge of "the existence of a valid and enforceable contract." Because Continental was a party to the insurance policy, that policy cannot form the basis for the tortious interference claim, and the plaintiffs do not argue otherwise. See *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 12-13 (Ind. App.

2010) (a party cannot interfere with its own contract so the tort can be committed only by a third party to the contract at issue). They have failed to identify any contract of which Continental had knowledge. The plaintiffs similarly fail to allege any facts that would allow a reasonable inference of the elements of intentional inducement and the absence of justification. The district court properly dismissed this claim for failure to state a claim.

The remaining challenge is to the court's dismissal of the claim for negligent infliction of emotional distress. The district court dismissed the claim because the complaint failed to allege any facts indicating either a direct physical impact or that the plaintiffs would fall within the exception to that requirement under the bystander rule. The brief on appeal again ignores the court's reasoning entirely, merely stating—without any citations or other legal support—that damages are recoverable where an insurer acts in bad faith, that Continental acted in bad faith in failing to pay the full amount, and that "such a situation would cause any reasonable person emotional distress." That is the entire argument made by the plaintiffs, without any further development. The plaintiffs fail to even identify the relevant legal standard let alone apply it. We will not consider such undeveloped arguments. *United States v. Alanis*, 265 F.3d 576, 586 (7th Cir. 2001); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984).

The decision of the district court is AFFIRMED.